1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN STOLL,<br><br>      **Plaintiff,**<br><br>    **v.**<br><br>COUNTY OF KERN, EDWARD JAGELS,<br>EDWARD LAWRENCE KLEIER, CAROL<br>DARLING, VELDA MURILLO, BRADFORD<br>JAMES DARLING, CONNY ERICSSON,<br>KERN COUNTY SHERIFF'S OFFICE,<br>KERN COUNTY WELFARE DEPARTMENT,<br>and DOES 1-30, inclusive,<br><br>      **Defendants.** | **1:05-CV-01059 OWW SMS**<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTIONS TO DISMISS**<br>**(F.R.Civ.P. 12(b)(6))** |

**I.   INTRODUCTION**

Defendants County of Kern ("the County"), Edward Jagels ("Jagels"), Edward Lawrence Kleier ("Kleier"), Carol Darling ("C. Darling"), Bradford James Darling ("B. Darling"), the Kern County Sheriff's Office ("KCSO"), and the Kern County Welfare Department ("KCWD") (collectively, "Defendants I") move to dismiss Plaintiff John Stoll's ("Plaintiff" or "Stoll") first, sixth, seventh, and eighth causes of action, and to dismiss or strike portions of the fourth cause of action.  Defendants Velda Murillo ("Murillo") and

1

Conny Ericsson ("Ericsson") (collectively, "Defendants II") also move to dismiss the first, fourth, sixth, seventh, and eighth causes of action, and to dismiss or strike portions of the fourth cause of action.[1]  Plaintiff opposes both motions as to the first and fourth causes of action, and requests leave to amend the sixth, seventh, and eighth causes of action.

## II.   PROCEDURAL HISTORY

Plaintiff filed the complaint on August 16, 2005.  Doc. 1, Complaint.  Defendants I filed their motion to dismiss on November 7, 2005.  Doc. 20, Mot. to Dismiss I.  Defendants II filed their motion to dismiss on November 8, 2005.  Doc. 25, Mot. to Dismiss II.  Plaintiff filed a Memorandum/Response in Opposition to Motions to Dismiss on December 23, 2005.  Doc. 32, Mem. in Opp.  Defendants I filed a Reply on December 29, 2005. Doc. 33, Reply.

## III.   BACKGROUND

On January 17, 1985, Plaintiff was convicted of child molestation.  *People v. John Andrew Stoll, Grant Gene Self, Margie Grafton, and Timothy Palomo*, Kern County Superior Court Case Nos. 27636, 27789, and 27813.  A jury found Plaintiff guilty on seventeen counts of violating Section 288, subdivision (a), of the California Penal Code (lewd and lascivious conduct with a minor).  Plaintiff's accusers were six alleged child-abuse victims who testified at trial, including Plaintiff's six-year-

---

[1] The caption of Murillo's and Ericsson's motion to dismiss indicates that they seek dismissal of the fifth cause of action, as well, but the motion itself does not address it.

old son.  No physical evidence corroborated the children's

testimony.  On September 27, 1985, the Kern County Superior Court

sentenced Plaintiff to a total term of imprisonment of forty

years.  On November 27, 1987, the California Court of Appeal,

Fifth Appellate District, affirmed Plaintiff's conviction.

In December, 2002, Plaintiff petitioned the Kern County

Superior Court for a writ of habeas corpus.  On April 30, 2004,

Superior Court Judge John I. Kelly granted Plaintiff's petition,

finding that improper interview techniques employed by Ericsson

and Murillo on the alleged child-abuse victims created a

substantial risk that their trial testimony was unreliable, in

violation of Plaintiff's constitutional due-process right to a

fair trial.  Four of the six alleged child victims, now adults,

testified under oath at Plaintiff's habeas corpus evidentiary

hearing that their trial testimony against Plaintiff was

completely false; a fifth testified that he had no memory of any

molestation.  Jagels declined to retry Plaintiff and dropped all

charges against him.  Plaintiff was freed on May 4, 2004.

### IV.   LEGAL STANDARD

Rule 12(b)(6) allows a defendant to attack a complaint for

failure to state a claim upon which relief can be granted.  A

motion to dismiss under Rule 12(b)(6) is disfavored and rarely

granted: "[a] complaint should not be dismissed unless it appears

beyond doubt that plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  *Van Buskirk v.*

*CNN, Inc.,* 284 F.3d 977, 980 (9th Cir.2002) (citations omitted).

In deciding whether to grant a motion to dismiss, the court

**3**

1  "accept[s] all factual allegations of the complaint as true and

2  draw[s] all reasonable inferences in favor of the nonmoving

3  party." *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999).

4  "The court need not, however, accept as true allegations that

5  contradict matters properly subject to judicial notice or by

6  exhibit.  Nor is the court required to accept as true allegations

7  that are merely conclusory, unwarranted deductions of fact, or

8  unreasonable inferences." *Sprewell v. Golden State Warriors,* 266

9  F.3d 979, 988 (9th Cir.2001) (citations omitted).  For example,

10 matters of public record may be considered under Fed.R.Evid. 201,

11 including pleadings, orders, and other papers filed with the

12 court or records of administrative bodies.  *See Lee v. City of*

13 *Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001).  Conclusions of

14 law, conclusory allegations, unreasonable inferences, or

15 unwarranted deductions of fact need not be accepted.  *See Western*

16 *Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

17                              **V.   ANALYSIS**

18 The First Cause of Action

19      The first cause of action names the County, Ericsson,

20 Kleier, and Jagels as Defendants.  Ericsson is sued in his

21 personal capacity.  Kleier is sued in both his personal and

22 official capacities.  Jagels is sued only in his official

23 capacity.

24      Plaintiff alleges that Ericsson arrested Plaintiff during

25 the night of June 13, 1984, without a warrant or exigent

26 circumstances that would otherwise justify arrest, in knowing or

27 reckless violation of at least Plaintiff's Fourth, Fifth, and

28 Fourteenth Amendment federal constitutional rights.

**4**

1    Plaintiff alleges that Ericsson and Kleier failed to obtain
2    a constitutionally timely probable-cause review of Ericsson's
3    arrest of Plaintiff, in knowing or reckless violation of at least
4    Plaintiff's Fourth, Fifth, and Fourteenth Amendment federal
5    constitutional rights, and of his rights under Article I, Section
6    14, of the California Constitution and Section 849 of the
7    California Penal Code.

8    Plaintiff further alleges that Ericsson, Kleier, and Jagels
9    failed to provide him a constitutionally timely arraignment, in
10   knowing or reckless violation of at least Plaintiff's Fourth,
11   Fifth, and Fourteenth Amendment federal constitutional rights.
12   Doc. 1, Complaint, ¶¶ 42-46.

13   Plaintiff alleges that Defendants' failures to schedule a
14   timely probable-cause hearing and timely arraignment arose from a
15   policy, custom, or practice on the part of the Defendants, either
16   to fail to have procedures in force which would have prevented
17   such constitutional injuries to Plaintiff and others, or in
18   failing to enforce such procedures as were in place.  Plaintiff
19   alleges that this policy, custom, or practice amounted to
20   deliberate indifference to Plaintiff's constitutional rights.
21   Doc. 1, Complaint, ¶ 47.

22   Plaintiff claims that Kleier, as a policymaker for the KCSO,
23   was responsible for the failures to seek a timely probable-cause
24   hearing and timely arraignment, and that Jagels, as a policymaker
25   for the County District Attorney's Office, was responsible for
26   the failure to seek a timely arraignment.

27   Plaintiff seeks punitive damages from Ericsson and Kleier.
28   A.   The statute of limitations

**5**

1    Both Defendants I and Defendants II argue that the statute

2   of limitations bars Plaintiff's first cause of action.  Doc. 20,

3   Mot. to Dismiss I, 3-5; Doc. 25, Mot. to Dismiss II, 5-7;[2] Doc.

4   33, Reply, at 3-4.  "Where the facts and dates alleged in a

5   complaint demonstrate that the complaint is barred by the statute

6   of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion

7   should be granted." *Ritchie v. United States,* 210 F.Supp.2d

8   1120, 1123 (N.D.Cal.2002).  "When a motion to dismiss is based on

9   the running of the statute of limitations, it can be granted only

10  if the assertions of the complaint, read with the required

11  liberality, would not permit the plaintiff to prove that the

12  statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677,

13  682 (1980); *see also TwoRivers,* 174 F.3d at 991.

14   When Plaintiff was arrested and subsequently imprisoned,

15  Section 352(a)(3) of the California Code of Civil Procedure

16  provided for tolling of a cause of action for damages if, at the

17  time of accrual, the plaintiff was "imprisoned on a criminal

18  charge, or in execution under the sentence of a criminal court

19  for a term less than for life."  Cal. Civ. Pro. Code § 352(a)(3).

20  In 1994, the California legislature repealed Section 352(a)(3)

21  and replaced it with Section 352.1, which limited the tolling

22  effect of imprisonment to two years.  Cal. Civ. Pro. Code

23  § 352.1.

24   *Johnson v. State of California*, 207 F.3d 650, 654 (9th Cir.

25  2000), applied Section 352.1 retroactively, holding that claims

26  _____

27     [2]  Defendants' Motions I and II are substantially identical.

28

**6**

1    that accrued before January 1, 1995 are tolled for two years

2    after accrual, or until January 1, 1995, whichever is later.  *Id.*

3    (citing *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999)).

4         Plaintiff was arrested in June, 1984.  Claims arising out of

5    his arrest were tolled until January 1, 1995.  Two years

6    thereafter is January 1, 1997.

7         Plaintiff states five grounds for why his first cause of

8    action is not time-barred.

9    1.   Tolling

10        Plaintiff argues that under *Heck v. Humphrey*, 512 U.S. 477

11   (1994), he could not have brought the first cause of action until

12   he was released in 2004 by writ of habeas corpus, because the

13   allegations set forth therein call the validity of his conviction

14   into question.

15        In *Heck*, the United States Supreme Court held that

16        when a state prisoner seeks damages in a [Section] 1983

17        suit, the district court must consider whether a

18        judgment in favor of the plaintiff would *necessarily*

19        *imply* the invalidity of his conviction or sentence; if

20        it would, the complaint must be dismissed unless the

21        plaintiff can demonstrate that the conviction or

22        sentence has already been invalidated.  *But if the*

23        *district court determines that the plaintiff's action,*

24        *even if successful, will not demonstrate the invalidity*

25        *of any outstanding criminal judgment against the*

26        *plaintiff, the action should be allowed to proceed, in*

27        *the absence of some other bar to the suit.*

28   *Heck*, 512 U.S. at 487 (emphasis added); *see also Wilkinson v.*

**7**

1  *Dotson*, — U.S. —, 125 S.Ct. 1242, 1247 (2005) ("Section 1983

2  remains available for procedural challenges where success in the

3  action would not necessarily spell immediate or speedier release

4  for the prisoner").

5       Plaintiff's first cause of action seeks damages for

6  violations of his constitutional rights caused by an alleged

7  warrantless arrest, untimely probable-cause hearing, and untimely

8  arraignment, which allegedly resulted in his wrongful

9  incarceration.  Plaintiff does not argue that through these

10  violations of his federal constitutional rights the Defendants

11  acquired evidence which contributed to his subsequent conviction,

12  Doc. 32, Mem. in Opp., 6, but, rather, that "had [he] not been

13  falsely arrested on June 13, 1984, and not continuously falsely

14  jailed at least up to June 19, 1984, he would and could have . .

15  . brought forward evidence to show that the accusations

16  attributed to his son against him were unsupportable[.]"  Doc.

17  32, Mem. in Opp. at 6.  Plaintiff argues that had he been free to

18  communicate with his son during this period, Plaintiff could have

19  dispelled the coercive influence which Defendants exerted upon

20  him.

21       These allegations are accepted as true for the purpose of

22  deciding a motion to dismiss.  *Manistee Town Ctr. v. City of*

23  *Glendale*, 227 F.3d 1090, 1091 (9th Cir. 2000).  A Section 1983

24  suit is barred if success on the cause of action would *logically*

25  call Plaintiff's conviction into question.  *See Osborne v.*

26  *District Attorney's Office for the Third Judicial District*, 423

27  F.3d 1050, 1054 (9th Cir. 2005).  Here, the determinations that

28  Plaintiff seeks – that his arrest was unlawful, and that his

probable-cause hearing and arraignment were untimely – would not necessarily mean that Plaintiff's due-process right to a fair trial was violated:

> To be barred under *Heck*, a [Section 1983] claim must, if successful, necessarily demonstrate the invalidity of confinement or its duration.

*Osborne*, 423 F.3d at 1055 (*citing Dotson*, 125 S.Ct. at 1247); *see also Osborne*, 423 F.3d at 1054 (*Dotson* "reads 'necessarily' to mean 'inevitably'").

The determinations which Plaintiff seeks would not inevitably lead to the underlying conviction's being invalidated or set aside.  An unlawful arrest does not *per se* prevent further prosecution and conviction for the underlying crime, nor does delay in a probably cause hearing and arraignment prevent a further prosecution and conviction for the underlying crime. *Heck* was not a bar to the first cause of action.

2.   Non-accrual

Plaintiff states, without argument or citation to legal authority, that his first cause of action "did not accrue in June[,] 1984[.]"  A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004).  Plaintiff's cause of action accrued when he knew or had reason to know of the alleged warrantless arrest, the untimely probable-cause hearing, and the untimely arraignment.  These events allegedly occurred in June, 1984, which would commence the limitations period absent tolling.

3.   Section 352(a)(3) Tolling

1   Plaintiff argues that Section 352(a)(3) of the California
2   Code of Civil Procedure, in effect when he was arrested and
3   imprisoned, tolled the statute of limitations until his release
4   from prison.

5   This argument has already been addressed, *supra*, at 5-7.
6   4.   *Wilson v. Garcia*

7   Plaintiff argues that *Wilson v. Garcia*, 471 U.S. 261 (1985),
8   allows him to bring all his Section 1983 claims in one suit,
9   based on the Court's policy consideration in favor of a "uniform
10  approach."  Doc. 32, Mem. in Opp. at 8.

11  *Wilson* only holds that Title 42, Section 1988, of the United
12  States Code is "fairly construed as a directive to select, in
13  each State, the one most appropriate statute of limitations for
14  all [Section] 1983 claims."  *Wilson*, 471 U.S. at 275.   The Court
15  did not hold that all Section 1983 claims may be brought in one
16  suit.   This contention is misplaced.

17  5.   State Statutes Not to be Applied in Derogation of Federal
18       Rights

19  Plaintiff argues that the statute of limitations set forth
20  at Section 352(a)(3) does not apply to the first cause of action
21  because it cuts off his federal right under Section 1983.   Doc.
22  32, Mem. in Opp. at 8.  *Wilson*'s holding, however, rests on the
23  rule that the most analogous state statutes of limitation are
24  "borrowed" for Section 1983 suits.   Plaintiff's contention is not
25  supported by law.

26  B.   Jagels – Prosecutorial Immunity

27  Defendants I argue that Jagels is immune from suit on the
28  first cause of action by virtue of absolute prosecutorial

**10**

1   immunity.

2        A prosecutor is protected by absolute immunity from

3   liability for damages under Section 1983 "when performing the

4   traditional functions of an advocate." *Kalina v. Fletcher,* 522

5   U.S. 118, 131 (1997).  However, "the actions of a prosecutor are

6   not absolutely immune merely because they are performed by a

7   prosecutor." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)

8   (qualified immunity may also apply to a prosecutor).

9   Prosecutorial immunity depends on "the nature of the function

10  performed, not the identity of the actor who performed it."

11  *Kalina,* 522 U.S. 118 at 127 (quoting *Forrester v. White,* 484 U.S.

12  219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).  Prosecutors are

13  entitled to qualified immunity, rather than absolute immunity,

14  when they perform administrative functions, or "investigative

15  functions normally performed by a detective or police officer."

16  *Id.* at 126, 118 S.Ct. 502.  *See also Burns v. Reed,* 500 U.S. 478,

17  494-96 (1991).

18        The Supreme Court has consistently "emphasized that the

19  official seeking absolute immunity bears the burden of showing

20  that such immunity is justified for the function in question."

21  *Id.* at 486, 111 S.Ct. 1934.  Further, "the presumption is that

22  qualified rather than absolute immunity is sufficient to protect

23  government officials in the exercise of their duties." *Id.* at

24  486-87.  Finally, the Supreme Court has "been quite sparing in

25  [its] recognition of absolute immunity, and ha[s] refused to

26  extend it any further than its justification would warrant." *Id.*

27  at 487, 111 S.Ct. 1934 (citations and quotation marks omitted).

28        To qualify as advocacy, an act must be "intimately

**11**

1 associated with the judicial phase of the criminal process."
2 *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976); *Kalina,* 522 U.S. at
3 125 (quoting *Imbler* ); *Buckley,* 509 U.S. at 270 (same); *Burns,*
4 500 U.S. at 479 (same).  Such activity is sometimes called
5 "quasi-judicial" conduct.  *E.g., Broam v. Bogan,* 320 F.3d 1023,
6 1029 (9th Cir.2003) ("[I]n deciding whether to accord a
7 prosecutor immunity from a civil suit for damages, a court must
8 first determine whether a prosecutor has performed a quasi-
9 judicial function.  If the action was part of the judicial
10 process, the prosecutor is entitled to the protection of absolute
11 immunity whether or not he or she violated the civil plaintiff's
12 constitutional rights.") (citation and internal quotation marks
13 omitted).

14     In *Imbler,* the Court observed that absolute "immunity . . .
15 leave[s] the genuinely wronged defendant without civil redress
16 against a prosecutor whose malicious or dishonest action deprives
17 him of liberty."  424 U.S. at 432.  However, the Court explained
18 that absolute immunity for prosecutorial advocacy is justified
19 because, "the alternative of qualifying a prosecutor's immunity
20 would disserve the broader public interest" in protecting the
21 prosecutor's abilities to exercise independent judgment and to
22 advocate vigorously without the threat of retaliation.  *Id.* at
23 429.  Thus, a prosecutor enjoys absolute immunity from a suit
24 alleging that he maliciously initiated a prosecution, used
25 perjured testimony at trial, or suppressed material evidence at
26 trial.  *Imbler,* 424 U.S. at 430.  A prosecutor is also absolutely
27 immune for direct participation in a probable cause hearing,
28 *Burns,* 500 U.S. at 491, 111 S.Ct. 1934, and for preparing and

1  filing charging documents, *Kalina,* 522 U.S. at 130, 118 S.Ct.

2  502.  *Genzler v. Longanbach*, 410 F.3d 630, 636 –637 (9th Cir.

3  2005).

4       As to Jagels, the District Attorney, the first cause of

5  action alleges only that he failed to obtain a constitutionally

6  timely arraignment for Plaintiff, in knowing or reckless

7  violation of at least Plaintiff's Fourth, Fifth, and Fourteenth

8  Amendment rights.  Doc. 1, Complaint, ¶¶ 42-46.  Jagels is sued

9  in his official capacity for his alleged failure to establish

10 procedures that would have ensured timely arraignment, or,

11 alternatively, to enforce such procedures as were in place.  *Id*.

12 Plaintiff argues that Jagels is not entitled to prosecutorial

13 immunity because the first cause of action implicates only his

14 role as administrator, not as prosecutor.

15      Arraignment in court to enter a plea to a criminal charge is

16 a core judicial function which leads directly to prosecution.  As

17 such, arraignment is "intimately associated with the judicial

18 phase of the criminal process." *Kalina,* 522 U.S. at 125.

19 Plaintiff sues Jagels for allegedly failing to establish or

20 enforce policies which form part of his prosecutorial function.

21 Jagels is entitled to absolute prosecutorial immunity for an

22 alleged failure to timely prosecute Plaintiff.

23 C.   Ericsson

24      Defendants II argue that the first cause of action should be

25 dismissed as to Ericsson on the grounds of both prosecutorial

26 immunity and Eleventh Amendment sovereign immunity.

27 1.   Ericsson's prosecutorial immunity

28      Plaintiff alleges that Ericsson, a deputy sheriff, arrested

**13**

Plaintiff in his home without a warrant or exigency; failed to
provide him a timely probable-cause hearing; and failed to
provide him a timely arraignment.  Doc. 1, Complaint, ¶¶ 42-46.
Ericsson asserts prosecutorial immunity against the allegation
that he failed to provide Plaintiff a timely arraignment.  Doc.
25, Mot. to Dismiss II, 8.

Arraignment in court to enter a plea to a criminal charge is
a core judicial function which leads directly to prosecution.  As
such, arraignment is "intimately associated with the judicial
phase of the criminal process." *Kalina,* 522 U.S. at 125.
Plaintiff sues Ericsson for his alleged failure to properly
discharge a prosecutorial function.  Ericsson is entitled to
prosecutorial immunity against this allegation.

Ericsson is also entitled to prosecutorial immunity for the
second of these allegations – that he failed to provide Plaintiff
with a timely probable-cause hearing.  In *Burns v. Reed*, 500 U.S.
478 (1993), the United States Supreme Court held that prosecutors
are absolutely immune from suit under Section 1983 for actions
they undertook in participating in a probable-cause hearing:

> Immunity for that action under [Section] 1983 accorded
> with the common-law absolute immunity of prosecutors
> and other attorneys for eliciting false or defamatory
> testimony from witnesses or for making false or
> defamatory statements during, and related to, judicial
> proceedings.  Under that analysis, appearing before a
> judge and presenting evidence in support of a motion
> for a search warrant involved the prosecutor's role as
> advocate for the State.  Because issuance of a search

14

1    warrant is a judicial act, appearance at the probable-
2    cause hearing was intimately associated with the
3    judicial phase of the criminal process[.]
4  *Buckley v. Fitzsimmons*, 509 U.S. 259, 270-271 (1993) (*citing*
5  *Burns*) (citations and internal quotation marks omitted).

6        Prosecutorial immunity depends on "the nature of the
7  function performed, not the identity of the actor who performed
8  it." *Kalina,* 522 U.S. 118 at 127.  The fact that Ericsson was a
9  deputy sheriff, not a prosecutor, does not prevent prosecutorial
10 immunity from shielding him from allegations that he improperly
11 discharged a prosecutorial function.  Ericsson is protected by
12 prosecutorial immunity for participating in prosecutorial
13 functions.

14 2.  Ericsson's Eleventh Amendment immunity

15       Without argument or citation to legal authority, Ericsson, a
16 deputy sheriff, asserts entitlement to Eleventh Amendment
17 sovereign immunity.  Doc. 25, Mot. to Dismiss II, 8.  In
18 *McMillian v. Monroe County*, 520 U.S. 781 (1997), the United
19 States Supreme Court held that state-actor immunity from suit in
20 federal court applies to county officers such as sheriffs only if
21 they were acting as state agents with final policy-making
22 authority over the complained-of actions.  *McMillian*, 520 U.S. at
23 784-85.  The Supreme Court also held that whether a particular
24 official has final policymaking authority is a question of state
25 law.  *McMillian*, 520 U.S. at 786.

26       In *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004),
27 the California Supreme Court suggested that sheriff's deputies do
28 not have final policymaking authority, and are not entitled to a

1  sheriff's Eleventh Amendment immunity.  *Venegas*, 32 Cal.4th at

2  839 ("the parties in this case have correctly assumed that the

3  sheriff's deputies would not be shielded by the sheriff's own

4  state-agent immunity").  Sheriff's deputies are not entitled to

5  Eleventh Amendment sovereign immunity.  *Id.*  Federal courts are

6  bound by this determination.  *McMillian*, 520 U.S. at 786.

7  Ericsson is not entitled to Eleventh Amendment sovereign

8  immunity.

9      Eleventh Amendment immunity does not bar suit against state

10 officials sued in their personal capacities.  *Porter v. Jones*,

11 319 F.3d 483, 491 (9th Cir. 2003); *Rounds v. Oregon State Bd. of

12 Higher Educ.*, 166 F.3d 1032, 1036 n.2 (9th Cir. 1999).  Ericsson

13 is sued only in his personal capacity.  The Eleventh Amendment

14 does not shield him from suit.

15 <u>The Fourth Cause of Action</u>

16     The fourth cause of action names the County, KCWD, Ericsson,

17 Murillo, Kleier, and B. Darling as Defendants.  Ericsson and

18 Murillo are sued in their personal capacities, while Kleier and

19 B. Darling are sued in both their personal and official

20 capacities.  Doc. 1, Complaint, ¶ 83.

21     Plaintiff alleges that shortly after Plaintiff was jailed on

22 charges of child sexual abuse, Ericsson and Murillo conducted

23 interviews with various children whom they suspected Plaintiff

24 had molested.  Doc. 1, Complaint, ¶¶ 85-94.  Plaintiff alleges

25 that these interviews were unduly coercive and manipulative,

26 failed to conform to applicable standards regarding how to

27 interview child victims of alleged sexual abuse, and resulted in

28 false accusations of molestation.  Id., ¶¶ 20, 37, 86.  Plaintiff

**16**

further alleges that Ericsson and Murillo failed to preserve and
disclose exculpatory statements, made by each of the children
during the interviews, vehemently denying that they had been
sexually abused, and that this failure deprived Plaintiff of his
due process right to a fair trial.  Id., ¶ 86.

Plaintiff also alleges that secret tapes of these interviews
were made by Ericsson and Murillo, and that their failure to turn
the tapes over to defense counsel constituted a *Brady* violation,
and deprived Plaintiff of his due process right to a fair trial.
Id., ¶¶ 87-88, 91-92.

Plaintiff alleges that neither Ericsson nor Murillo was
trained to preserve exculpatory evidence; that Kleier and B.
Darling knew or should have known of their lack of training, but
nonetheless failed to remedy it; and that this amounted to a
policy or custom or practice on the part of the County.  Id.,
¶ 96.  Alternatively, Plaintiff argues that Ericsson and Murillo
received such training, but failed to apply it, and their
supervisors recklessly failed to ensure that Ericsson and Murillo
did so.  Id., ¶ 97.

Plaintiff further alleges that neither KCWD, nor Kleier, nor
B. Darling, had appropriate procedures in place to see that *Brady*
evidence was turned over to the defense or to permit review of
the actions of their subordinates to prevent unconstitutional
deprivations of liberty arising from failure to disclose such
evidence.  Id., ¶ 98.

These allegations, unlike those set forth in the first cause
of action, necessarily call the validity of Plaintiff's
conviction and sentence into question.  They refer to the basis

1    upon which the Kern County Superior Court granted Plaintiff's
2    petition for writ of habeas corpus.  The fourth cause of action
3    was barred by *Heck*, and did not accrue until the grant of the
4    writ of habeas corpus setting aside Plaintiff's conviction and
5    ordering his release in 2004.

6         Defendants argue that these allegations fail to state a
7    cause of action, and should be dismissed pursuant to F.R.Civ.P
8    12(b)(6), because no claim for damages exists to remedy a *Brady*
9    violation.

10   1.   Dismissal for failure to state a claim

11        In a line of directly analogous and binding precedent cited
12   by neither side – *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir.
13   2001), *Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir.
14   2003), and *Gausvik v. Perez*, 345 F.3d 813 (9th Cir. 2003) – the
15   Ninth Circuit has closely circumscribed the range of faulty-
16   investigation claims which may form the basis for Section 1983
17   liability in the context of child sexual abuse.

18        In *Devereaux*, a foster parent who had been accused of sexual
19   misconduct with his foster children brought a Section 1983 action
20   against various government entities and law enforcement
21   officials, alleging that defendants manipulated and coerced the
22   children into giving false evidence against him, and withheld and
23   ignored exculpatory evidence.  *Devereaux*, 263 F.3d at 1073-74.
24   Defendants asserted qualified immunity, and the district court
25   granted summary judgment.  *Devereaux*, 263 F.3d at 1074.

26        Although the posture of this case differs, the Ninth
27   Circuit's rationale is instructive.  Proceeding according to the
28   two-step qualified immunity approach established by *Saucier v.*

**18**

*Katz*, 533 U.S. 194 (2001), the Ninth Circuit ruled that

> there is no constitutional due process right to have
> child witnesses in a child sexual abuse investigation
> interviewed in a particular manner, or to have the
> investigation carried out in a particular way.

*Devereaux*, 263 F.3d at 1075.  Instead, the Ninth Circuit requires that a plaintiff:

> must, at a minimum, point to evidence that supports at
> least one of the following two propositions: (1)
> [d]efendants continued their investigation of
> [plaintiff] despite the fact that they knew or should
> have known that he was innocent; or (2) [d]efendants
> used investigative techniques that were so coercive and
> abusive that they knew or should have known that those
> techniques would yield false information.

*Devereaux*, 263 F.3d at 1076.  Deliberate falsification of evidence is required; mere faulty investigative techniques will not suffice to state a Section 1983 due process claim.  *Id*.

Liberally construed, the complaint alleges the deliberate falsification of evidence.  *See, e.g.*, Doc. 1, Complaint, ¶ 34.

In *Cunningham*, the Ninth Circuit ruled that "[a] police officer's failure to preserve or collect potential exculpatory evidence does not violate the Due Process Clause unless the officer acted in bad faith."  *Cunningham*, 345 F.3d at 812. Plaintiff argued that the officer acted in bad faith because he failed to document his interrogations and did not keep a record of two children's statements denying sexual abuse.  The Ninth Circuit rejected this argument, on the grounds that the officer

1  "likely believed his tactics were lawful."  *Id.*; accord, *Gausvik*,
2  345 F.3d at 818.

3       In *Rodriguez-Hidalgo v. Perez*, 128 Fed.Appx. 577 (9th Cir.
4  2005), the Ninth Circuit summarized its holdings from the
5  preceding cases:

6       [E]vidence of an interviewer engaging in the following
7       behavior while interviewing suspected sexual abuse
8       witnesses, without more, is insufficient to support a
9       deliberate-fabrication-of-evidence claim: disbelieving
10      an initial denial and continuing with aggressive
11      questioning; ... using overbearing or suggestive
12      tactics when interviewing children; and failing to
13      record initial denials of abuse.

14 *Perez*, 128 Fed.Appx. at 579.  "The 'more' *Devereaux* requires
15 consists of evidence of intent or deliberate indifference."
16 *Perez*, 128 Fed.Appx. at 580.  Here, when liberally construed, the
17 complaint alleges bad faith falsification of evidence on the part
18 of Ericsson and Murillo.

19      Defendants' motion to dismiss the fourth cause of action on
20 the grounds that it fails to state a claim for falsification of
21 evidence is DENIED.  As to alleged *Brady* violations, the motion
22 is GRANTED.

23 2.   Collateral Estoppel

24      Defendants further argue that the claims concerning the
25 secret taping of child interviews, and the failure to turn the
26 alleged tapes over to defense counsel, are barred by the doctrine
27 of collateral estoppel; are an attempt by Plaintiff to appeal a
28 state court judgment to a federal court and are therefore barred

by the *Rooker-Feldman* doctrine; or, alternatively, should be stricken pursuant to Rule 12(f).

A federal court must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984); *In re Mantz*, 343 F.3d 1207, 1214 (9th Cir. 2003); *see also* Romualdo P. Eclavea, Annotation, *State or Federal Law as Governing Applicability of Doctrine of Res Judicata or Collateral Estoppel in Federal Court Action*, 19 A.L.R. Fed. 709, § 4[b].

"Traditionally, collateral estoppel has been found to bar re-litigation of an issue decided at a previous proceeding 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be re-litigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].' It is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. [Citation.] An issue is actually litigated '[w]hen [it] is *properly raised,* by the pleadings or otherwise, and is submitted for determination, and is *determined* ....' " (*People v. Sims* (1982) 32 Cal.3d 468, 484, 186 Cal.Rptr. 77, 651 P.2d 321, fn. omitted; see also *People v. Taylor* (1974) 12 Cal.3d 686, 695, 117 Cal.Rptr. 70, 527 P.2d 622 [the doctrine's purposes are: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the

1   integrity of the judicial system; and (3) to provide repose by

2   preventing a person from being harassed by vexatious litigation."].)

3   *People v. Carter*, 36 Cal.4th 1215, 1240 (2005).

4        Defendants argue that all the elements of collateral

5   estoppel are satisfied.  The Superior Court in the habeas corpus

6   proceeding held that Plaintiff "has not met his burden of showing

7   that tapes were made during the interviews of the child witnesses

8   prior to their testimony at trial."  Ruling, at 2.  The issue was

9   thus litigated and decided at the habeas corpus proceeding.  The

10  previous proceeding resulted in a decision on the merits –

11  Plaintiff's petition was granted.  Finally, the party against

12  whom Defendants seek to assert collateral estoppel is Plaintiff

13  in the present case.

14       However, the issue of the existence of the tapes was not

15  necessary to the Superior Court's decision to grant the writ of

16  habeas corpus.  This element of collateral estoppel is absent.

17  Claim preclusion does not apply in this case.

18  3.   *Rooker-Feldman*

19       The *Rooker-Feldman* doctrine is only applicable to those

20  federal claims where the losing party in state court asserts that

21  the state court judgment itself violates the loser's federal

22  rights.  *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005).  In

23  this case, Plaintiff was the winning party in the habeas corpus

24  proceeding.  His fourth cause of action does not claim that the

25  state court ruling violated his federal rights.  *Rooker-Feldman*

26  does not apply.  The motion is denied on this ground.

27  4.   Rule 12(f)

28       F.R.Civ.P. 12(f) authorizes a motion to strike from

**22**

1   any pleading "any insufficient defense or any redundant,

2   immaterial, impertinent, or scandalous matter."   Rule 12(f),

3   F.R.Civ.P.

4        Defendants move to strike from the complaint as immaterial

5   paragraphs 84, 85, 87, 88, 91, and 92, and the words, "and the

6   audio recordings of these interviews" from line 12 of paragraph

7   95, on the grounds of collateral estoppel and lack of subject-

8   matter jurisdiction.   Doc. 20, Mot. to Dismiss I, 12; Doc. 25,

9   Mot. to Dismiss II, 15.

10       Plaintiff alleges in these paragraphs that the interview

11  rooms of the KCSO were equipped with concealed tape-recording

12  equipment, Doc. 1, Complaint, ¶ 84, and that Ericsson and Murillo

13  used this equipment to tape-record their interviews of several

14  children, id., ¶¶ 85, 87, 91.   Plaintiff also claims that

15  Ericsson and Murillo tape-recorded home interviews of other

16  children, id., ¶ 88.   Plaintiff alleges that Ericsson and Murillo

17  deliberately or recklessly failed to disclose the existence and

18  contents of these tapes to defense counsel or the prosecutor,

19  despite knowing that they recorded the children's denials of

20  sexual abuse, and were therefore material, exculpatory evidence.

21  Id., ¶¶ 85, 87, 88, 91.

22       Plaintiff further alleges that, in another child-sexual-

23  abuse-ring case, Ericsson "repeatedly lied under oath that he had

24  made no audio recording of a suspected child sex abuse victim

25  whom he interviewed at KCSO."

26       Many years later, the audio tape was discovered and was

27       deemed non-disclosed material exculpatory evidence,

28       constituting *Brady* error, resulting in the conviction

**23**

1    reversals of supposed "Cox ring" members.

2    Id., ¶ 92.

3         It has already been determined that the collateral estoppel
4    effect of the Superior Court's habeas corpus order does not bar
5    Plaintiff from alleging that Ericsson and Murillo tape-recorded
6    their interviews of children whom they suspected Plaintiff had
7    molested to facilitate falsifying evidence.  Even if the habeas
8    corpus barred this claim, it would not require that these
9    paragraphs be stricken in their entirety.  Liberally construed,
10   these paragraphs allege also that Ericsson and Murillo did not
11   disclose the children's vehement denials that they had been
12   molested to falsify evidence that molestation had occurred.

13        Paragraph 92, on the other hand, is not relevant to this
14   case, and appears to have been included to argue Plaintiff's
15   claim regarding the existence of the tape-recordings.  As an
16   irrelevant allegation, it is ordered stricken.

17        Defendants' argument that the court lacks subject-matter
18   jurisdiction over the issue of the tapes' existence is based on
19   the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine does
20   not apply to this case.

21   The Sixth, Seventh, and Eighth Causes of Action

22        The sixth, seventh, and eighth causes of action are
23   supplemental state-law claims.  28 U.S.C. § 1367.  The sixth
24   cause of action restates the factual allegations against
25   Defendants Ericsson, Kleier, and KCSO, regarding the warrantless
26   arrest, and untimely probable-cause hearing and arraignment,
27   previously alleged in his first cause of action.  Plaintiff
28   asserts these alleged acts and omissions were committed in

**24**

reckless violation of Plaintiff's rights under at least Article
1, Sections 1, 13, 14, and 15, of the California Constitution.
Plaintiff seeks punitive damages from Ericsson and Kleier.  Doc.
1, Complaint, ¶¶ 110-13.

In the seventh cause of action, based on California Civil
Code Section 52.1(b), alleges that Defendants County, Ericsson,
Murillo, Kleier, B. Darling, and C. Darling interfered with,
denied, aided or incited denial of Plaintiff's exercise or
enjoyment of rights secured by the United States Constitution and
the laws of the State of California, including but not limited to
Article 1, Sections 1, 13, 14, and 15 of the California
Constitution.  Plaintiff seeks punitive damages from Ericsson,
Murillo, Kleier, B. Darling, and C. Darling.  Id., ¶¶ 114-17.

In the eighth cause of action, Plaintiff alleges that
Defendants County, KCSO, KCWD, Kleier, B. Darling, and C.
Darling, knew, or, in the exercise of reasonable care, should
have known, that Defendants Ericsson and Murillo had a
propensity, while acting under color of State law, to intimidate
and coerce children into making false accusations of child
molestation, or to otherwise induce such false accusations, to
fabricate inculpatory evidence and withhold or conceal or fail to
preserve exculpatory evidence, to tailor investigative reports so
as to procure unfounded criminal charges against innocent
citizens such as Plaintiff, and/or to suborn false testimony in
court proceedings so as to procure wrongful felony convictions of
citizens such as Plaintiff.  Id., ¶ 119.

Plaintiff further alleges in the eighth cause of action that
Defendants County, KCSO, KCWD, Kleier, B. Darling, and C. Darling

1    negligently failed to properly train, assign, discipline, and/or

2    control Defendants Ericsson and Murillo, and/or assigned

3    Defendants Ericsson and Murillo to duties which enabled each of

4    them to act upon the propensities alleged in the previous

5    paragraph.  Id., ¶ 120.

6        Plaintiff alleges that "[a]s a proximate result of these

7    negligent acts and omissions of [D]efendants, and each of them,

8    [Plaintiff] has suffered loss of freedom, pain, suffering,

9    inconvenience, mental anguish, humiliation, fear, emotional

10   distress, injury to reputation, embarrassment, expenses, loss of

11   constitutional rights, loss of income, loss of earning capacity,

12   and loss of familial relationships."  Id., ¶ 121.

13       In California, a claimant seeking money damages for personal

14   injury against a county or its employees must present a claim to

15   the county before commencing a law suit.  Cal. Gov. Code § 905.

16   Such claims must be presented within six months of accrual of the

17   cause of action.  Cal. Gov. Code § 911.2.  Failure to allege

18   compliance with the claim-filing requirement, or excuse

19   therefrom, is an essential element of a cause of action against a

20   public entity.  Cal. Gov. Code § 945.4; *State of California v.*

21   *Superior Court*, 32 Cal.4th 1234, 1243 (2004).

22       Plaintiff concedes that he failed to plead timely compliance

23   with the claims-filing requirements, and seeks leave to amend his

24   complaint to do so.

25       Defendants' motions to dismiss the sixth, seventh, and

26   eighth causes of action are GRANTED, WITH LEAVE TO AMEND.

27                          **VI.  CONCLUSION**

28       Defendants' motions to dismiss the first cause of action are

                                  **26**

GRANTED.  Defendants' motions to dismiss the fourth cause of
action are DENIED.  Defendants' motions to strike paragraph 92
pursuant to Rule 12(f) of the Federal Rules of Civil Procedure
are GRANTED.  Defendants' motions to dismiss the sixth, seventh,
and eighth causes of action are GRANTED, with LEAVE TO AMEND.
Any amended compliant shall be filed within twenty days.

**SO ORDERED**

**DATED: January 25_, 2006.**


                                        **/s/ OLIVER W. WANGER**
                                _____
                                    **OLIVER W. WANGER**
                                **United States District Judge**