1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ANDREW STOLL,<br><br>                 **Plaintiff,**<br><br>     **v.**<br><br>COUNTY OF KERN, EDWARD JAGELS,<br>EDWARD LAWRENCE KLEIER, CAROL<br>DARLING, VELDA MURILLO,<br>BRADFORD JAMES DARLING, COUNTY<br>ERICSSON, KERN COUNTY<br>SHERIFF'S OFFICE, KERN COUNTY<br>WELFARE DEPARTMENT, and DOES<br>1-30, inclusive,<br><br>                 **Defendants.** | 1:1:05-CV-01059 OWW SMS<br><br>**MEMORANDUM DECISION AND ORDER<br>RE GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION FOR RECONSIDERATION OF<br>THE COURT'S RULE 12(b)(6)<br>ORDER (DOC. 39)** |

1.  <u>INTRODUCTION</u>

Plaintiff John Stoll ("Plaintiff") sues under 42 U.S.C. §
1983 claiming violations of his Fourth, Fifth, Sixth, Eighth, and
Fourteenth Amendment rights.  Defendants County of Kern, Edward
Jagels ("Jagels"), Edward Lawrence Kleier ("Kleier"), Carol
Darling ("C. Darling"), Bradford James Darling ("B. Darling"),
the Kern County Sheriff's Office ("KCSO"), and the Kern County
Welfare Department ("KCWD") moved to dismiss Plaintiff's first,
sixth, seventh, and eighth causes of action, and to dismiss or
strike the *Brady* portions of the fourth cause of action.
Defendants Velda Murillo ("Murillo") and Conny Ericsson
("Ericsson") also moved to dismiss the first, fourth, sixth,

1

seventh, and eighth causes of action, and to strike the *Brady*
portions of the fourth cause of action.  A January 27, 2006 Order
dismissed Plaintiff's first cause of action and Plaintiff's *Brady*
claims as stated in the fourth cause of action.  Plaintiff moves
for a reconsideration of these dismissals.

## 2.  PROCEDURAL BACKGROUND

Plaintiff filed the complaint on August 16, 2005.  (Doc. 1,
Complaint.)  County of Kern, Jagels, Kleier, C. Darling, B.
Darling, the KCSO, and the KCWD filed their motion to dismiss on
November 7, 2005.  (Doc. 20, Motion to Dismiss I.)  Defendants
Murillo and Ericsson filed their motion to dismiss on November 8,
2005.  (Doc. 25, Motion to Dismiss II, collectively with Motion
to Dismiss I, "Motion to Dismiss".)  Plaintiff filed a
memorandum/response in opposition to Motion to Dismiss on
December 23, 2005.  (Doc. 32, Memorandum in Opposition.)  County
of Kern, Jagels, Kleier, C. Darling, C. Darling, the KCSO, and
the KCWD filed a reply on December 29, 2005.  (Doc. 33, Reply.)
An order on Defendants' Motion to Dismiss was filed on January
27, 2006. (Doc. 35, Order.)  Plaintiff filed a motion for
reconsideration on February 16, 2006.  (Doc. 39, Motion for
Reconsideration, "MR".) Plaintiff filed a first amended complaint
on February 16, 2007. (Doc. 38, First Amended Complaint, "FAC".)
County of Kern, Jagels, Kleier, C. Darling, C. Darling, the KCSO,
and the KCWD filed a memorandum/response in opposition to
Plaintiff's MR on March 3, 2006. (Doc. 44, Response to MR.)

## 3.  FACTUAL BACKGROUND

Plaintiff alleges that on June 14, 1984, Ericsson, a deputy
sheriff, entered Plaintiff's home in Kern County and arrested

1  Plaintiff without a warrant and without exigent circumstances.

2  (Doc. 1, Complaint, ¶ 44.)  Plaintiff was brought to the KCSO and

3  jailed.  (Doc. 38, FAC, ¶ 45.)  Plaintiff asserts that he was not

4  given a probable-cause hearing until more than 100 hours

5  following his warrantless arrest.  (*Id.*)  Plaintiff further

6  alleges that Ericsson, Kleier, and District Attorney Jagels

7  failed to provide Plaintiff a constitutionally timely

8  arraignment.  (Doc. 1, Complaint, ¶ 46.)  Plaintiff was not

9  arraigned until June 19, 1984, 5 days after his initial arrest.

10  (*Id.*)

11      Plaintiff alleges that shortly after he was jailed on

12  charges of child sexual abuses, Ericsson and county social worker

13  Murillo conducted interviews with various children whom they

14  suspected Plaintiff had molested.  (Doc. 1, Complaint, ¶ 94.)

15  Plaintiff alleges that Ericsson and Murillo failed to disclose

16  exculpatory statements, made by each of the children during the

17  interviews, who repeatedly denied that they had been sexually

18  abused.  (Doc. 1, Complaint, ¶ 95.)  Plaintiff asserts that the

19  interviews were recorded, but the tapes containing these

20  exculpatory statements were never disclosed to him during the

21  criminal proceedings.  (*Id.*)

22      On January 17, 1985, Plaintiff was convicted of child

23  molestation.  (Doc. 1, Complaint, ¶ 16.)  Plaintiff's accusers

24  were six alleged child-abuse victims who testified at trial,

25  including Plaintiff's six year-old son.  (*Id.*)  Plaintiff

26  maintains that the six child witnesses had all previously been

27  interviewed by Murillo and Ericsson, and during the interviews

28

**3**

1  all denied that Plaintiff molested them.  (Doc. 1, Complaint, ¶
2  94.)  No physical evidence corroborated the children's
3  testimonies. (*Id.*)  On September 27, 1985, the Kern County
4  Superior Court sentenced Plaintiff to a total term of
5  imprisonment of forty years.  (*Id.*)  On November 27, 1987, the
6  California Court of Appeal, Fifth Appellate District, affirmed
7  Plaintiff's conviction. (*Id.*)

8      In December 2000, Plaintiff petitioned the Kern County
9  Superior Court for a writ of habeas corpus.  (Doc. 1, Complaint,
10  ¶ 17.)  On April 30, 2004, Superior Court Judge John I. Kelly
11  granted Plaintiff's petition, finding that improper interview
12  techniques employed by Ericsson and Murillo as to the alleged
13  child-abuse victims created a substantial risk that their trial
14  testimony was unreliable, in violation of Plaintiff's
15  constitutional due process rights to a fair trial. (*Id.*)  Four
16  of the six alleged child victims, now adults, testified under
17  oath at Plaintiff's habeas corpus evidentiary hearing that their
18  trial testimony against Plaintiff was completely false.  (*Id.*)  A
19  fifth witness testified that he had no memory of any molestation.
20  (*Id.*)  Jagels declined to retry Plaintiff and all charges against
21  him were dropped.  (*Id.*)  Plaintiff was released from custody on
22  May 4, 2004.  (Doc. 1, Complaint, ¶ 18.)  Following his
23  warrantless arrest and subsequent conviction, Plaintiff alleges
24  he was subject to actual, uninterrupted incarceration from June
25  13, 1984 through May 4, 2004.  (Doc. 1, Complaint, ¶ 45.)

26                    **4.  STANDARD OF REVIEW**
27      A court's power to reconsider an interlocutory order is
28  recognized by Fed. R. Civ. P. 54(b) which states that an "order

**4**

1  or other form of decision is subject to revision at any time

2  before the entry of judgment adjudicating all the claims and the

3  rights and liabilities of all the parties."  A motion for

4  reconsideration is appropriate where the district court (1) is

5  presented with newly discovered evidence, (2) committed clear

6  error or the initial decision was manifestly unjust, (3) if there

7  was an intervening change in controlling law.  *See School*

8  *District No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d 1255,

9  1263 (9th Cir. 1993).  A reconsideration motion should not merely

10  present arguments previously raised, or which could have been

11  raised in the initial summary judgment motion.  *See Backlund v.*

12  *Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). ("The motion was

13  properly denied here because . . . it presented no arguments that

14  had not already been raised in opposition to summary judgment.");

15  *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal.

16  1997)[1] ("[M]otions to reconsider are not vehicles permitting the

17  unsuccessful party to "rehash" arguments previously presented...

18  Nor is a motion to reconsider justified on the basis of new

19  evidence which could have been discovered prior to the court's

20  ruling....Finally, "after thoughts" or "shifting of ground" do

21  not constitute an appropriate basis for reconsideration."). *See*

22  Local Rule for the Eastern District of California 78-

23  230(k)(moving party is required to show in a motion for

24  reconsideration "new or different facts or circumstances claimed

25

26      [1] The underlying decision on the merits, *United States v.*
    *Navarro*, 959 F. Supp. 1273 (E.D. Cal. 1997), was reversed by
27  *United States v. Navarro*, 160 F.3d 1254 (9th Cir. 1998), *cert.*
    *denied* 119 S. Ct. 2354, 144 L. Ed. 2d 249 (1999).  This reversal
28  did not affect the district court's denial of reconsideration.

to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion.") E.D. Cal. Local R. § 78-230(k).

## 5. <u>DISCUSSION</u>

### I. First Cause of Action: 42 U.S.C. § 1983

Section 1983 actions are governed by the state statute of limitations for personal injury actions. *Azer v. Connell*, 306 F.3d 930, 935 (9th Cir. 2002). Effective January 1, 2003 the new California statute of limitations was extended from one year to two years. *See* Cal. Code Civ. Proc. § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). However, while state law determines the length of the limitations period, "federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Morales*, 214 F.3d at 1154.

### a. Accrual of Stoll's § 1983 Claim

The first issue is when Stoll's § 1983 claim accrued and commenced the running of the statute of limitations. Defendants argue that Stoll's § 1983 claim "has been lost... because Plaintiff became aware of the alleged violation in June of 1984, when he was "wrongfully incarcerated, not timely arraigned and did not take any action with regard to the cause of action for over twenty one years." (Doc. 44, Opposition to MR, P. 3; *see also* Doc. 20, Motion to Dismiss I, P. 5.)

//

### i. Failure to Obtain Timely Judicial Review

**6**

The Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), provided guidance for determining when Plaintiff's § 1983 Fourth Amendment failure to obtain timely judicial review claim accrues. In the January 1, 2007 Order on this motion to dismiss the court stated the *Heck* rule as follows:

> In *Heck*, the United States Supreme Court held that when a state prisoner seeks damages in a [Section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply* the invalidity of his conviction or sentence; if it would, the complaint must be dismissed *unless* the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

(Doc. 35, Order (*citing, Heck,* 512 U.S. at 487).); *see also, Whitaker v. Garcetti*, 486 F.3d 572, 583 (9th Cir. 2007).

*Heck* stands for the proposition that where a § 1983 claim brought by a prisoner would invalidate his conviction, the § 1983 claim should be dismissed. *See Whitaker*, 486 F.3d at 581.

Stoll was convicted in 1985. On April 30, 2004 Stoll's petition for a writ of habeas corpus was granted and his conviction was set aside. Stoll has met his burden "demonstrating that the conviction or sentence has already been invalidated." In its January 1, 2005 Order, the court erroneously engaged in an analysis of whether Stoll's § 1983 cause of action necessarily invalidated his underlying conviction. This analysis was unnecessary in light of the grant of Stoll's habeas petition and his subsequent release. "[A] prisoner... has no cause of action under § 1983 unless and until the conviction is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the

**7**

1    conviction or sentence has been invalidated."  *Id.* at 489-490.

2    In this case, Stoll's cause of action for failure to obtain

3    timely judicial review under § 1983 did not begin to accrue until

4    April 30, 2004, the day his conviction was invalidated.

5                    **ii. Warrantless Arrest**

6         The Supreme Court's *Wallace v. Kato*, 127 S.Ct. 1091 (2007)

7    decision, is the latest expression as to accrual of Fourth

8    Amendment false arrest claims.  The new rule, limiting the *Heck*

9    deferred accrual rule, is that regardless of subsequent events,

10   the statute of limitations for false arrest claims begins to run

11   when a claimant is wrongfully detained pursuant to the legal

12   process. *Id.*, at 1100. *Heck* does not toll the statute of

13   limitations. The *Wallace* court noted that "[e]ven assuming,

14   however, all damages for detention pursuant to legal process

15   could be regarded as consequential damages attributable to the

16   unlawful arrest, that would not alter the commencement date for

17   the statute of limitations." *Id.,* at 1097. The court specifically

18   rejected the argument that the statute of limitation for false

19   arrest begins only after "an anticipated future

20   conviction...occurs and is set aside." *Id.,* at 1098.  However, it

21   did observe that after a suit is filed, a district court could

22   stay the action until the underlying criminal case has ended, if

23   a claim for false arrest is timely filed. *Id.*; *see also E.Holley*

24   *v. County of Yolo*, No. CIV S-06-2586 GEB EFB PS, 2007 WL 2384680,

25   at *3 (E.D. Cal. Aug. 17, 2007) *(*citing *Wallace*, 127 S.Ct. at

26   1098.)  However, after *Wallace* no *Heck* tolling applies to save

27   unfiled Fourth Amendment false arrest claims.

28           **b.   California's Statute of Limitations**

                              **8**

The next issue is whether Stoll's § 1983 claims for failure to obtain timely judicial review and warrantless arrest were filed within California's two year statute of limitations for personal injury claims.

Plaintiff's cause of action for failure to obtain timely judicial review began to accrue on April 30, 2004, the day his conviction was vacated.  Plaintiff's deadline for filing his § 1983, failure to obtain timely judicial review claim pursuant to California's two year statute of limitations law was April 30, 2006.  *See* Cal. Code Civ. Proc. § 335.1; *Blanas*, 393 F.3d at 927. Stoll was released from jail on May 4, 2004.  Stoll filed his § 1983 claim on August 16, 2005, well within California's two year statutory period.  (Doc. 1, Complaint.)  The court erroneously dismissed Stoll's § 1983 claim for failure to obtain timely judicial review in its January 27, 2006 Order, except for the false arrest claim.

Plaintiff's motion for reconsideration is **GRANTED as to the first claim for failure to obtain timely judicial review**.

Plaintiff's cause of action for warrantless arrest began to accrue when he was first detained by the criminal justice system in June 1984, not April 30, 2004 the day his conviction was invalidated.  Under California's two year statute of limitations, Plaintiff did not file his claim within the statutory period.

Plaintiff's false arrest claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

 The order dismissing Plaintiff's first cause of action as to the failure to obtain timely judicial review is **VACATED**.

**9**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II. Defendant Jagels and Prosecutorial Immunity**

The January 27, 2006 Order found that even if Plaintiff's first cause of action is not time-barred, the claim as to Jagels is nonetheless barred by prosecutorial immunity. (Doc. 35, Order, 13: 21, 22.)  Plaintiff now argues that prosecutorial immunity has no application to a prosecutor sued only in his or her official capacity, and requests that the ruling on this matter be reconsidered.  (Doc. 41, MR, 7:22-24.)

The first cause of action is against Jagels only in his official capacity.  A suit against an individual officer in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In other words, the real party in interest here is the entity for which Jagels works.  *See id.*  State law determines whether, for § 1983 purposes, a district attorney acts as a county official or state official when performing a particular function.  *Weiner v. San Diego County,* 210 F.3d. 1025, 1028 (9th Cir. 2000).  Under California law, a district attorney acts as a state official for purposes of § 1983 liability, rather than a county official, when preparing to prosecute and while prosecuting crimes.  *Pitts v. County of Kern,* 17 Cal.4th 340, 362 (1998).  A district attorney also represents the state, and not the county, when training and developing policy in these areas because "[n]o meaningful analytical distinction can be made between these functions."  *Id.*

The first cause of action alleges that Jagels failed to obtain a constitutionally timely arraignment for Plaintiff and had a policy or practice of failing to ensure that county jail

**10**

inmates are promptly arraigned after arrest.  (Doc. 1, Complaint, ¶¶ 46, 48.)  Arraignment in court to enter a plea to a criminal charge is a core judicial function which leads directly to prosecution.  (Doc. 35, Order, 13:15, 16.)  As such, arraignment falls under a district attorney's prosecutorial capacity to prepare for the prosecution of crime.  Under *Pitts*, Defendant Jagels represented the State when performing the functions of a prosecutor. Kern County cannot be liable for the district attorney's alleged failure to timely arraign.  Rather, the State is the real party in interest.  The Eleventh Amendment, however, bars suits against a state for damages or injunctive relief, unless the state has consented to or waived immunity.  *In re Harleston,* 331 F.3d 699, 701 (9th Cir. 2003).  It is not alleged that the State has expressly or implicitly waived sovereign immunity.  The State cannot be held liable for Defendant Jagels' core prosecutorial, alleged misconduct.  A federal action against a state officer acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against the State is barred.  *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  The first cause of action as to Defendant Jagels was properly dismissed with prejudice.  The motion to reconsider is **DENIED.**

### III. Defendant Ericsson and Prosecutorial Immunity

In the first cause of action, Plaintiff alleges that Defendant Ericsson committed three constitutional errors: (1) failing to secure a timely probable-cause review of Plaintiff's warrantless arrest; (2) contributing to the delayed arraignment

**11**

for Plaintiff; and (3) arresting Plaintiff without a warrant under nonexigent circumstances.  (Doc. 41, MR, 9:12-18.) Defendant Ericsson is sued only in his individual capacity. (Doc. 1, Complaint, ¶ 43.)  The January 27, 2006 Order held that even if Plaintiff's first cause of action is not time-barred, the claims that Defendant Ericsson failed to secure a timely probable-cause review and arraignment are still barred by prosecutorial immunity.  (Doc. 35, Order, 14: 12-16.)  Plaintiff argues that the January 27, 2006 Order's characterization of Defendant Ericsson as a "prosecutor" in performing these functions is overly narrow, and requests that the ruling on this matter be reconsidered.  (Doc. 41, MR, 9:23-24, 10:1:4.)

Defendant Ericsson was a deputy sheriff who investigated the criminal case.  A prosecutor sued in his or her individual capacity is protected by absolute immunity from liability for damages under § 1983 "when performing the traditional functions of an advocate."  *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). To qualify as advocacy, an act must be "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976); *Kalina*, 522 U.S. at 125. Such activity is sometimes called "quasi-judicial" conduct. E.g., *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003). However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).  Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it."  *Forrester v. White*, 484 U.S. 219, 229 (1988).  The fact that Defendant Ericsson was

**12**

deputy sheriff, not a prosecutor, does not prevent prosecutorial
immunity from shielding him from allegations that he improperly
discharged a prosecutorial function.  *See Kalina*, 522 U.S. at
127.

In *Burns v. Reed*, 500 U.S. 478 (1993), the United States
Supreme Court held that prosecutors are absolutely immune from
suit under § 1983 for actions undertaken in participating in a
probable-cause hearing:

> Immunity for that action under [Section] 1983
> accorded with the common-law absolute immunity of
> prosecutors and other attorneys for eliciting
> false or defamatory testimony from witnesses or
> for making false or defamatory statements during,
> and related to, judicial proceedings.  Under that
> analysis, appearing before a judge and presenting
> evidence in support of a motion for search warrant
> involved the prosecutor's role as advocate for the
> State.  Because issuance of a search warrant is a
> judicial act, appearance at the probable-cause
> hearing was intimately associated with the
> judicial phase of the criminal process[.]

If a prosecutor is sued in his or her individual capacity for
failure to perform a constitutionally-required function and he
or she is entitled to prosecutorial immunity, a sheriff that
fails to perform the same function is entitled to the same
immunity.  *See Buckley,* 509 U.S. at 276 (holding that when the
functions of prosecutors and detectives overlap, the immunity
that protects them is the same). Under *Burns*, a prosecutor is
absolutely immune from unconstitutionally failing to secure a
timely probable-cause hearing for an arrestee, it follows that
Defendant Ericsson, a deputy sheriff engaged in the identical
functions, is also entitled to prosecutorial immunity for
failing to secure a timely probable-cause hearing for Plaintiff.

**13**

Plaintiff argues that Defendant Ericsson cannot be treated as a "prosecutor" here because California Penal Code § 849 requires that a peace officer promptly bring an arrestee before a magistrate for a probable-cause review when making an arrest without a warrant.  (Doc. 41. MR, 10:5-16.)  However, there is no inconsistency in simultaneously recognizing the two. Ultimately, prosecutorial immunity under § 1983 depends not on whose duty it is to perform a certain function, but rather on whether the function performed is "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Kalina*, 522 U.S. at 125. The ruling that Defendant Ericsson has prosecutorial immunity for failing "to provide" a timely probable-cause hearing for Plaintiff is affirmed.

Plaintiff's second claim against Defendant Ericsson is that he contributed to causing the delayed arraignment for Plaintiff. (Doc. 41, MR, 9:12-18.)  Arraignment in court to enter a plea to a criminal charge is another core judicial function that leads directly to prosecution and is "intimately associated with the judicial phase of the criminal process."  *Kalina*, 522 U.S. at 125.  Although a deputy sheriff can affect the time of arraignment if a suspect is detained and intentionally not taken before a court for arraignment, such specific action has not been alleged.  Accordingly, the Court's ruling that Defendant Ericsson has prosecutorial immunity for contributing to Plaintiff's delayed arraignment is affirmed.  Plaintiff's motion for reconsideration as to defendant Ericsson is **DENIED.**

**14**

1    Plaintiff's final claim against Defendant Ericcson is for
2  warrantless arrest.  Plaintiff correctly observes that the Order
3  made no ruling nor offered an immunity rationale protecting
4  Ericcson for the alleged constitutional error. (Doc. 41, MR.)

5    A police officer may be entitled to immunity if there is
6  probable cause for the warrantless arrest or if there was belief
7  that his or her conduct was lawful. *see, e.g., Blankenhorn v.*
8  *City of Orange,* 485 F.3d 463, 473 (9th Cir. 2007).  "A police
9  officer may make a warrantless arrest when the officer has
10 probable cause to believe that the person to be arrested has
11 committed a felony, whether or not a felony, in fact, has been
12 committed."  *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th
13 Cir. 2003)(quoting Cal. Penal Code Section 836(a)(3)(West
14 2003)).  Even without probable cause, qualified immunity may be
15 available "if a reasonable police officer could have believed
16 that his or her conduct was lawful, in light of the clearly
17 established law and information the searching officers
18 possessed."  *Peng*, 335 F.3d at 980.  Such an inquiry "must be
19 undertaken in light of the specific context of the case, not as
20 a broad general proposition... [t]he contours of the right must
21 be sufficiently clear that a reasonable official would
22 understand that what he is doing violates that right." *Saucier*
23 *v. Katz*, 533 U.S. 194, 201-02 (citation omitted).

24   Whether Defendant Ericsson is entitled to qualified
25 immunity for the warrantless arrest of Plaintiff depends on
26 whether Defendant Ericsson had probable cause or a reasonable
27 belief that his conduct was lawful based on clearly established
28

**15**

law.  Although there are allegations that Ericsson in effect knew of evidentiary problems and insufficiencies that might have caused him to question whether to effect an arrest under clearly established law and that a reasonable officer would not have arrested Stoll, the motion to dismiss the first cause of action for false arrest as to Ericcson must be **GRANTED** as it is time barred.   Under the recent *Wallace* decision, the Supreme Court held that the limitation period for a § 1983 claim for false arrest "begins to run at the time the claimant becomes detained pursuant to legal process," even where the arrest is followed by criminal proceedings.  *Wallace*, 127 S. Ct. at 1100.  The Supreme Court expressly limited its decision only to Fourth Amendment false arrest claims. *Id.* at 1094 n.1.

## IV.   Defendant Kleier and Prosecutorial Immunity

In the first cause of action, Plaintiff alleges that Defendant Kleier committed two constitutional errors: (1) failing to obtain a timely probable-cause review of Plaintiff's arrest; and (2) contributing to the delay in arraignment for Plaintiff.  (Doc. 35, Order.)  Defendant Kleier is sued in his official and personal capacities (Doc. 1, Complaint, ¶ 43.)  The January 27, 2006 Order addresses Defendant Kleier's liability, but not his immunity (if any), from suit.  (Doc. 35, Order.)  Plaintiff argues that there is no basis for dismissing the first count as to Kleier on immunity grounds.  (Doc. 41, MR.)  However, Defendant Kleier did not move to dismiss the first cause of action on immunity grounds.  Reconsideration as to Defendant Kleier is unnecessary.

**16**

### V. Fourth Cause of Action (Brady Violation)

The fourth cause of action names Ericsson, Kleier, Murillo, and B. Darling as Defendants. (Doc. 1, Complaint, ¶ 83.)  All named Defendants are sued in their individual capacities. (*Id.*)  B. Darling is also sued in his official capacity. (*Id.*)  Plaintiff alleges Defendants' reckless or deliberately indifferent failure to disclose exculpatory evidence violated Plaintiff's due process rights under *Maryland v. Brady,* 373 U.S. 83, 87 (1963).[2]  Plaintiff's *Brady* claims were dismissed based on three "directly analogous and binding precedent[s]"[3] which hold that the Ninth Circuit has restricted the range of § 1983 claims based on faulty investigation in child sexual abuse contexts to those involving deliberate or bad faith falsification of evidence. (Doc 35, Order, 18:11-17; 19:16-18; 20:16-18.)  Plaintiff now argues that no Ninth Circuit precedent, including the three cases cited by the Court, prohibits a plaintiff from pleading *Brady* claims in a civil case and requests that this Court reconsider its prior decision. (Doc. 41, MR, 2:24; 3:1- 9-24.)

---

[2] In *Brady,* the prosecution, upon defense's request to examine the extra-judicial statements made by the defendant's confederate, withheld a statement in which the confederate admitted he had perpetrated the actual killing.  The Court held that the suppression by prosecution of evidence favorable to an accused upon request violates due process "where evidence is material either to guilty or to punishment, irrespective of good faith of prosecution."

[3] *Devereaux v. Abbey,* 262 F.3d 1070 (9th Cir. 2001); *Cunningham v. City of Wenatchee,* 345 F.3d 802 (9th Cir. 2003); and *Gausvik v. Perez,* 345 F.3d 813(9th Cir. 2003).

A *Brady* violation occurs where the prosecution suppresses material exculpatory evidence. *Brady*, 373 U.S. at 87.   To constitute a *Brady* violation in the criminal context, three elements must be met.   *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).   First, the State must have suppressed some evidence, either purposefully or inadvertently. *Id.*   Second, the evidence must be favorable to the accused because it is either exculpatory or impeachment material. *Id.*   Third, the evidence must be material to the outcome. *Id.*   Evidence is material for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 681-82 (1985).   The inquiry at hand is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).

In the criminal context, *Brady* imposes a "no fault" obligation upon prosecutors to turn over exculpatory evidence. *See Brady,* 373 U.S. at 87.   A prosecutor's withholding of exculpatory material evidence is grounds for a new trial, whether the withholding was innocent, negligent, or intentional. *Id.*   However, circuit courts are divided on the question of whether a similar "no fault" standard applies in civil cases where liability is based upon a *Brady* violation.   There is a split in the circuits. *Compare McMillan v. Johnson*, 88 F.3d 1154, 1567 (11th Cir. 1996) (holding that investigators have a

duty to disclose under *Brady* in a § 1983 action, irrespective of good or bad faith) with *Villasana v. Wilhoit*, 368 F.3d 979, 980 (8th Cir. 2004)(holding that bad faith is required to state *Brady* claims against law enforcement officials in a § 1983 action).  Neither the Supreme Court nor the Ninth Circuit has addressed this issue.

The Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."  *Daniels* does not require bad faith for a due process violation; rather, it requires only a deliberate decision on the part of an officer to deprive a person of life, liberty or property. *Daniels*, 474 U.S. at 331. The Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), provided further guidance for a due process challenge to executive action, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience." *Lewis*, at 847, n.8.  What constitutes conscious-shocking action depends on the facts and circumstances of each case.  *Id.*, at 850.  *Lewis* concerned a substantive due process claim in a police high-speed car chase, where the Court required the police officers' conduct to rise above deliberate indifference, reasoning deliberate indifference is more suitable to a situation where "actual deliberation is practical." *Id.,* at 851. While the Supreme Court has not fully explicated standards of culpability for substantive due process claims, the above provides some guidance.

**19**

A *Brady* due process claim makes the non-disclosure of exculpatory evidence a violation of the Due Process Clause irrespective of the good or bad faith of the non-disclosing officer in a criminal case; bad faith is not required to establish a civil *Brady* violation. Under *Daniels,* Plaintiff must establish that Defendants deliberately withheld exculpatory evidence from Plaintiff; not that the withholding was in bad faith; deliberate, purposeful withholding of material evidence by law enforcement officers is sufficiently outrageous to support an inference of bad faith, even if such a state of mind is not specifically required as a separate element of this constitutional tort.

Under the existing case law, Plaintiff has pled sufficient facts to withstand dismissal of his civil *Brady* claims.  First, Plaintiff alleges that two kinds of evidence were intentionally suppressed by one or more of named law enforcement Defendants who were under a constitutional duty to disclose: (1) tape recordings or verbatim transcriptions of the recordings of investigative interviews of some of the child witnesses were withheld, and (2) children's statements made during their interviews that Plaintiff had not sexually molested them were suppressed.  (Doc. 1, Complaint, ¶¶ 95, 96.)  Second, the evidence allegedly withheld could have been both exculpatory and impeachment evidence.  Denials of sexual abuse by the alleged victims were potentially exculpatory evidence.  The evidence against Plaintiff in his child molestation trial consisted solely of the testimony of child witnesses.  The children's prior inconsistent statements could have materially called their

**20**

reliability and credibility into question.  *See United States v. Williams,* 668 F.2d 1064, 1068 (9th Cir. 1981) (holding that prior inconsistent statements may be introduced to impeach a witness).  The described evidence asserted to have been withheld was allegedly favorable to Plaintiff.  Third, because the evidence against Plaintiff in his criminal trial consisted solely of children's testimonies with no corroborating physical evidence, the credibility of the child witnesses could have been dispositive of the trial outcome.  If believed by the jury, there is a reasonable probability that, had the witnesses' prior inconsistent statements been disclosed to the defense and introduced at the trial, the result of the trial would have been different.  The prosecution's failure to disclose such evidence could have prejudiced Plaintiff so as to deny Plaintiff a fair trial.  The evidence allegedly withheld was potentially material to the outcome.[4]  Finally, Plaintiff alleges sufficient facts to show that Defendants deliberately withheld the exculpatory statements from Plaintiff.

In dismissing Plaintiff's *Brady* claims, the Order cited three cases – *Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001); *Cunningham v. City of Wenatchee,* 345 F.3d 802 (9th Cir. 2003); and *Gausvik v. Perez,* 345 F.3d 813, (9th Cir. 2003). (Doc. 35,

---

[4] "*Brady* information includes 'material...that bears on the credibility of a significant witness in the case.'" *United States v. Brumel-Alvarez,* 991 F.2d 1452, 1461 (9th Cir. 1993) (quoting *United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir. 1988)).  Prior inconsistent statements of a pertinent witness may be material to the outcome.  *United States v. Hanna,* 55 F.3d 1456, 1459 (9th Cir. 1995).

**21**

Order, 10-17.)   All three cases pled a deliberate-fabrication-of-evidence claim, but none of the three cases dealt directly with a *Brady* claim.   The Order erroneously inferred from these cases that the Ninth Circuit no longer permits *Brady* claims because deliberate falsification of evidence is required to state a § 1983 claim.   Plaintiff alleges *Brady* claims, not deliberate-fabrication-of-evidence claims, in his fourth cause of action.[5]   (Doc. 1, Complaint, ¶ 85.)   Deliberate falsification of evidence is not a requirement for stating a *Brady* claim.   The previous dismissal of Plaintiff's *Brady* claims is vacated.   The motion to reconsider the claim is **GRANTED.**

## CONCLUSION

For the reasons set forth above,

(1) the motion to reconsider dismissal of Plaintiff's first cause of action is **GRANTED, except as to § 1983 Fourth Amendment false arrest.**   That claim is time barred as a matter of law and is **DISMISSED WITHOUT LEAVE TO AMEND.**

(2) The motion to reconsider Jagel's and Ericsson's absolute immunity defenses is **DENIED.**

(3) The motion to reconsider dismissal of Plaintiff's *Brady* claims is **GRANTED.**

IT IS SO ORDERED.

Dated:   September 24, 2007                    /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

_____

[5] Plaintiff alleges a deliberate-fabrication-of evidence claim in his fifth cause of action.   (Doc. 1, Complaint, ¶ 104.)

22