UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ANDREW STOLL,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, EDWARD JAGELS,<br>EDWARD LAWRENCE KLEIER, CAROL<br>DARLING, VELDA MURILLO,<br>BRADFORD JAMES DARLING, COUNTY<br>ERICSSON, KERN COUNTY<br>SHERIFF'S OFFICE, KERN COUNTY<br>WELFARE DEPARTMENT, and DOES<br>1-30, inclusive,<br><br>            Defendants. | 1:05-CV-01059 OWW SMS<br><br>MEMORANDUM DECISION AND ORDER<br>RE GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO DISMISS PLAINTIFF'S<br>FIRST AMENDED COMPLAINT<br>12(b)(6) ORDER (DOC. 42) |

## 1.   INTRODUCTION

    Plaintiff John Stoll ("Plaintiff") sues alleging federal and state causes of actions based upon the investigation, arrest, prosecution, conviction and imprisonment of Plaintiff for child sexual abuse.  Plaintiff's conviction of January 17, 1985 was vacated on April 30, 2004 following a habeas corpus evidentiary hearing.  Defendants County of Kern, Edward Jagels ("Jagels"), Edward Lawrence Kleier ("Kleier"), Carol Darling ("C. Darling"), Bradford James Darling ("B. Darling"), the Kern County Sheriff's Office ("KCSO"), and the Kern County Welfare Department ("KCWD") move to dismiss Plaintiff's first, second, third, fourth, and fifth causes of action.  Defendants Velda Murillo ("Murillo") and

1

Conny Ericsson ("Ericsson") also join the motion.  Oral argument was heard April 24, 2006.

## 2. PROCEDURAL BACKGROUND

Plaintiff filed the complaint on August 16, 2005.  (Doc. 1, Complaint)  County of Kern, Jagels, Kleier, C. Darling, B. Darling, the KCSO, and the KCWD filed their motion to dismiss on November 7, 2005.  (Doc. 20, Motion to Dismiss I)  Defendants Murillo and Ericsson filed their motion to dismiss on November 8, 2005.  (Doc. 25, Motion to Dismiss II, collectively with Motion to Dismiss I, "Motion to Dismiss")  An order on Defendants' Motion to Dismiss was filed on January 27, 2006. (Doc. 35, Motion to Dismiss Order)  Plaintiff filed a first amended complaint on February 16, 2006. (Doc. 38, First Amended Complaint ("FAC").) Plaintiff filed a motion for reconsideration on February 16, 2006.  (Doc. 39, Motion for Reconsideration)  County of Kern, Jagels, Kleier, C. Darling, B. Darling, the KCSO, and the KCWD ("County Defendants") filed their motion to dismiss Plaintiff's FAC on February 24, 2006.  (Doc. 42, Motion to Dismiss III.) Defendants Murillo and Ericsson filed their motion for joinder in Defendants' Motion to Dismiss III on February 24, 2006.  (Doc. 43, Defendants' Joinder)  Plaintiff filed his opposition to the Defendants' Motion to Dismiss III on March 13, 2006.  (Doc. 46, Opposition)  County Defendants filed their reply to Plaintiff's Opposition on March 17, 2006.  (Doc. 49, Reply)  Oral argument was heard on April 24, 2006.  An order on Plaintiff's MR was filed on September 25, 2007.  (Doc. 68, Motion for Reconsideration Order)

### 3. <u>FACTUAL BACKGROUND</u>

Plaintiff alleges that on June 14, 1984, Ericsson, a deputy sheriff, entered Plaintiff's home in Kern County and arrested Plaintiff without a warrant and without exigent circumstances. (FAC, ¶ 44)  Plaintiff was brought to the KCSO and jailed.  (Doc. 38, FAC, ¶ 45)  Plaintiff asserts that he was not afforded a probable-cause hearing until more than 100 hours following his warrantless arrest.  (*Id.*)  Plaintiff further alleges that Ericsson, Kleier, and District Attorney Jagels failed to provide Plaintiff a constitutionally timely arraignment.  (FAC, ¶ 46) Plaintiff was not arraigned until June 19, 1984, 5 days after his initial arrest.  (*Id.*)

Plaintiff alleges that shortly after he was jailed on charges of child sexual abuses, Ericsson and county social worker Murillo conducted interviews with various children whom they suspected Plaintiff had molested.  (FAC, ¶ 37)  Plaintiff alleges that Ericsson and Murillo failed to disclose exculpatory statements, made by each of the children during the interviews, who repeatedly denied that they had been sexually abused.  (FAC, ¶¶ 115-16)  Plaintiff asserts that the interviews were recorded, but the tapes containing these exculpatory statements were never disclosed to him during the criminal proceedings.  (FAC, ¶ 116)

On January 17, 1985, Plaintiff was convicted of child molestation.  (FAC, ¶ 16)  Plaintiff's accusers were six alleged child-abuse victims who testified at trial, including Plaintiff's six year-old son.  (*Id.*)  Plaintiff maintains that the six child witnesses had all previously been interviewed by Murillo and

**3**

1  Ericsson, and they gave false testimony, with some denying they

2  were molested.  (FAC ¶¶ 16,90-97)  No physical evidence

3  corroborated the children's testimonies.  (FAC ¶ 16)  On

4  September 27, 1985, the Kern County Superior Court sentenced

5  Plaintiff to a total term of imprisonment of forty years.  (*Id.*)

6  On November 27, 1987, the California Court of Appeal, Fifth

7  Appellate District, affirmed Plaintiff's conviction. (*Id.*)

8       In December 2000, Plaintiff petitioned the Kern County

9  Superior Court for a writ of habeas corpus.  (FAC ¶ 17)  On April

10  30, 2004, Superior Court Judge John I. Kelly granted Plaintiff's

11  petition, finding that improper interview techniques employed by

12  Ericsson and Murillo as to the alleged child-abuse victims

13  created a substantial risk that their trial testimony was

14  unreliable, in violation of Plaintiff's constitutional due

15  process rights to a fair trial.  (*Id.*)  Four of the six alleged

16  child victims, now adults, testified under oath at Plaintiff's

17  habeas corpus evidentiary hearing that their trial testimony

18  against Plaintiff was completely false.  (*Id.*)  A fifth witness

19  testified that he had no memory of any molestation.  (*Id.*)

20  Jagels declined to retry Plaintiff and all charges against him

21  were dropped.  (*Id.*)  Plaintiff was released from custody on May

22  4, 2004.  (FAC, ¶ 18)  Following his warrantless arrest and

23  subsequent conviction, Plaintiff alleges he was subject to

24  actual, uninterrupted incarceration from June 13, 1984 through

25  May 4, 2004.  (FAC, ¶ 47)

26                    **4. <u>STANDARD OF REVIEW</u>**

27       Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss

28  may be made if the plaintiff fails "to state a claim upon which

**4**

relief can be granted." However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

In deciding whether to grant a motion to dismiss, the Court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

## 5. DISCUSSION

**I.   First Cause of Action: 42 U.S.C. § 1983 (false arrest and failure to obtain timely judicial review)**

Plaintiff's first cause of action is a Section 1983, illegal warrantless arrest and failure to obtain timely judicial review claim. Plaintiff's first cause of action in his FAC is largely the same as his first cause of action in his original complaint,

**5**

except for the addition of paragraph 47, which was dismissed in part without leave to amend.  Specifically, in Plaintiff's original complaint, his first cause of action for false arrest was dismissed without leave to amend.  *See* Doc. 68, Motion for Reconsideration Order, p. 8.  Plaintiff's first cause of action for failure to obtain timely judicial review was originally dismissed in the motion to dismiss, but that decision was later vacated in the motion to reconsideration and found to be brought within the applicable statute of limitations.  Defendants here again seek to dismiss Plaintiff's first cause of action for false arrest and failure to obtain timely judicial review on statute of limitation grounds.

The one additional paragraph 47 in the FAC states:

> Pursuant to his warrantless arrest and subsequent conviction, plaintiff was the subject of actual, uninterrupted incarceration from June 13, 1984 through May 4, 2004.  Defendants would not be prejudiced by being required to defend this claim in these proceedings.  Plaintiff's conduct in brining this action has been reasonable and in good faith.

FAC, ¶47.  Otherwise, the first cause of action is largely the same.

Section 1983 actions are governed by the state statute of limitations for personal injury actions.  *Azer v. Connell*, 306 F.3d 930, 935 (9th Cir. 2002).  Effective January 1, 2003 the new California statute of limitations was extended from one year to two years.  *See* Cal. Code Civ. Proc. § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  However, while state law determines the length of the limitations period, "federal law determines when a civil rights claim accrues."  *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  Under

1  federal law, "a claim accrues when the plaintiff knows or has

2  reason to know of the injury which is the basis of the action."

3  *Id.* at 1154.

4       Defendants argue a three-year statute of limitations applies

5  and that Plaintiff had until January 1, 1998, thirteen and half

6  years, after his arrest and incarceration, to file a complaint

7  for his alleged warrantless arrest and untimely arraignment.

8  Defendants also argue that equitable tolling should not be

9  applied to the First Cause of Action.

10      A.   Warrantless Arrest

11      The motion for reconsideration determined that Plaintiff's

12  cause of action for warrantless arrest began to accrue when he

13  was first detained by the criminal justice system in June 1984,

14  not April 30, 2004, the day his conviction was invalidated.[1]

15  _____

16      [1]  The order on the Motion for Reconsideration provides:

17          The Supreme Court's *Wallace v. Kato*, 127 S.Ct. 1091
           (2007) decision, is the latest expression as to accrual
18          of Fourth Amendment false arrest claims.  The new rule,
           limiting the *Heck* deferred accrual rule, is that
19          regardless of subsequent events, the statute of
           limitations for false arrest claims begins to run when
20          a claimant is wrongfully detained pursuant to the legal
           process. *Id.*, at 1100.  *Heck* does not toll the statute
21          of limitations.
22          ---
           However, after *Wallace* no *Heck* tolling applies to save
23          unfiled Fourth Amendment false arrest claims.
24

25  (Doc, 68, Motion for Reconsideration Order, p. 8)  "This is not
   to say, of course, that petitioner could not have filed suit
26  immediately upon his false arrest. While the statute of
   limitations did not begin to run until petitioner became
27  detained pursuant to legal process, he was injured and suffered
   damages at the moment of his arrest, and was entitled to bring
28

                                  7

Plaintiff's false arrest claim was dismissed without leave to amend in the Motion for Reconsideration Order on the original complaint.  (Doc. 68, Motion for Reconsideration, p. 9) Defendants motion to dismiss Plaintiff's first cause of action for false arrest is GRANTED WITH PREJUDICE.

B.   Failure to Obtain Timely Judicial Review

In the motion for reconsideration, the dismissal of Plaintiff's first cause of action for failure to obtain timely judicial review, was vacated.  Applying *Heck v. Humphrey*, 512 U.S. 477 (1994)[2] it was determined that the claim began to accrue on April 30, 2004, the day Plaintiff's conviction was vacated, and his cause of action did not accrue until his conviction or sentence was invalidated.  *Id.* at 489-90.

> Plaintiff's deadline for filing his § 1983, failure to obtain timely judicial review claim pursuant to California's two year statute of limitations was April 30, 2006.  *See* Cal. Code Civ. Proc. § 335.1; *Blanas*, 393 F.3d at 927.  Stoll was released from jail on May 4, 2004.  Stoll filed his § 1983 claim on August 16, 2005, well within California's two year statutory period.

(Doc. 68, Motion for Reconsideration, p. 9)  Defendants provide no further argument, no new facts, or changed law, that alters this ruling when applied to the same cause of action in the FAC.

The motion to dismiss the first claim for failure to obtain

suit at that time."  *Wallace*, 127 S. Ct. at 1096 fn 3.

[2] *Heck* stands for the proposition that where a § 1983 claim brought by a prisoner would invalidate his conviction, the § 1983 claim should be dismissed.  *Whitaker v. Garcetti*, 486 F.3d 572, 583 (9th Cir. 2007).  Stoll's petition for a writ of habeas corpus was granted and his conviction was set aside, thereby meeting his burden that "the conviction or sentence has already been invalidated."  *Id.*

1    timely judicial review is DENIED.

2        **C. Defendant Jagels and Prosecutorial Immunity**

3        Defendants also move to dismiss the first cause of action

4    against Defendant Edward Jagels, elected District Attorney of

5    Kern County on grounds of prosecutorial immunity.  The first

6    cause of action is against Jagels only in his official capacity.

7    The claim alleges that Jagels failed to obtain a constitutionally

8    timely arraignment for Plaintiff (FAC ¶ 46) and had a policy of

9    failing to ensure that County jail inmates were promptly

10   arraigned following arrest. (FAC ¶ 49)

11       In the order on Defendants' Motion to Dismiss, the first

12   cause of action in Plaintiff's original complaint as to Defendant

13   Jagels was dismissed with prejudice, finding Jagels is entitled

14   to absolute prosecutorial immunity for an alleged failure to

15   timely prosecute Plaintiff.  Doc. 35, Motion to Dismiss Order,

16   p.13)

17       The motion for reconsideration found that Defendant Jagels

18   was properly dismissed with prejudice but dismissal was more

19   appropriate on grounds of Eleventh Amendment immunity, as

20   Defendant Jagels was a state actor when performing the alleged

21   actions asserted by Plaintiff and there was no express or

22   implicit waiver of sovereign immunity.  (Doc. 68, Motion for

23   Reconsideration Order, p. 11)

24       Here, Plaintiff in his FAC, once again sues Defendant Jagels

25   in his "representative capacity" which is in effect a claim

26   against the entity he is employed with, the State of California.

27   (FAC ¶ 43)  Plaintiff cannot bring a claim against Defendant

28   Jagels in his representative or official capacity as that claim

was previously dismissed with prejudice on grounds of Eleventh Amendment Immunity. *See* Doc. 68, Motion for Reconsideration Order, p. 11.

Defendant Jagels was already dismissed from this suit with prejudice. Defendants' motion to dismiss the first cause of action on behalf of Defendant Jagels is DISMISSED WITH PREJUDICE.

II. Second and Third Causes of Action: 42 U.S.C. § 1983 (failure to train, supervise peace officer Ericsson and KCSO investigators, social worker Murillo and KCWD social workers)

Defendants move to dismiss Plaintiff's second and third causes of action regarding failure to train and supervise peace officers and social workers. Plaintiff's second cause of action alleges that Defendants County, Deputy Sheriff Kleier and Sergeant B. Darling failed to train and supervise Defendant Ericsson, KCSO peace officer and KCSO investigators. Defendants Kleier and B. Darling are sued in their official capacities, making this portion of the second claim a suit against the County and a *Monell* claim. Defendants Kleier and B. Darling, sued in their official capacities are dismissed from the suit as redundant.[3] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). This ruling does not affect Defendants Kleier and B. Darling to the extent they are sued in their individual capacities.

---

[3] A suit against Defendants Deputy Sheriff Kleier and Sergeant B. Darling, in their official capacities is the same as a suit against Kern County, the payor of any damages that may be awarded. Suits against an official in her or his official capacity are treated as suits against the entity on whose behalf that official acts. In such suits, the real party in interest becomes the entity for which the official works. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff's third cause of action alleges that Defendant County, Sheriff B. Darling, sued in his official capacity, Prosecutor Jagels, sued in his official capacity, Sexual Abuse Coordinator for District Attorney's Office, Carol Darling, sued in her official capacity, KCWD and KCSO failed to train and supervise Defendant County social worker Velda Murillo and Defendants KCWD social workers.  Because Defendants B. Darling, C. Darling, Jagels are sued in their official capacities, and KCWD and KCSO are municipal departments, as in the second cause of action, this amounts to a *Monell* claim against the County. These Defendants and municipal department Defendants, KCWD and KCSO are dismissed from the suit.[4]  *See Brewster v. County of Shasta*, 275 F.3d 803, (9th Cir. 2001); *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-996 (N.D.Cal. 1996); *Stump v. Gates*,

---

[4] **The Kern County Sheriff's Department acts on behalf of the county when investigating crimes and can be subject to Section 1983 liability. *Brewster v. County of Shasta*, 275 F.3d 803, (9th Cir. 2001).  *Brewster* "is controlling on the issue of whether California sheriffs are subject to section 1983 liability." *Brockmeier v. Solano County Sheriff's Dept.*, 2006 WL 3760276 (E.D.Cal. Dec. 18, 2006).**

**Municipal departments are not appropriate Defendants.  Under Section 1983, a "person" acting under color of law may be sued for claims.  The term "persons" under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities. *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-996 (N.D.Cal. 1996).  But "persons" do not include municipal departments. *Id.*  "[N]aming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." *Stump v. Gates*, 777 F.Supp. 808, 816 (D.Colo. 1991).**

777 F.Supp. 808, 816 (D.Colo. 1991).[5]

Defendants contend that Plaintiff asserts in the second and third cause of action that the investigations were improperly handled, investigators failed to collect and preserve exculpatory evidence and coercive, leading and otherwise, inappropriate questioning of child witnesses and suspects.  Defendants contend that there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way under *Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001).  "Plaintiff tries to distance himself from *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001 - en banc), but clearly that case stands for the proposition that there is no due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner or to have the investigation carried out in a particular way.  Allegation of

_____

[5]  A suit against an individual officer in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  For Defendant Jagels, the real party in interest here is the entity for which Jagels works. *See id.*  State law determines whether, for § 1983 purposes, a district attorney acts as a county official or state official when performing a particular function. *Weiner v. San Diego County*, 210 F.3d. 1025, 1028 (9th Cir. 2000).  Defendant Jagels is alleged to have failed to train Defendant Murillo and Defendants KCWD social workers.  Whether Defendant Jagels is acting for the state in this capacity or the county, he is DISMISSED from the suit, because if he acts for the state, Eleventh Amendment immunity applies, *see Pitts v. County of Kern,* 17 Cal.4th 340, 362, 70 Cal.Rptr.2d 823 (1998); *In re Harleston,* 331 F.3d 699, 701 (9th Cir. 2003)*,* and if he acts for the County, the County is real party at issue here, since Defendant Jagels is sued in his official capacity.

improper interviewing techniques that violate state regulations, without more, cannot serve as a basis for a claim under 1983..." (Doc. 49, Reply, 8:23-28)

**A.   Failure to Train**

Plaintiff denies that his second and third cause of action are based on a deliberate-fabrication-of-evidence claim under *Devereaux*, and states the claims are broader *Monell* claims alleging deprivations of Stoll's 14th Amendment due process right to a fair trial, resulting in his unjust conviction and loss of liberty.  (Doc. 46, Opposition, 12:1-5)

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court limited a local government's liability under Section 1983 to those cases where "some official policy 'causes' an employee to violate another's constitutional rights."

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694.   Since "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort[,] ... a municipality cannot be held liable solely because it employs a tort feasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Id.* at 691.   A municipality will be held liable under § 1983 only if "the municipality itself causes the constitutional violation at issue."  *Canton v. Harris*, 489 U.S. 378, 385 (1989).

13

   To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three-part test:

> **(1) The local government official(s) must have intentionally violated the plaintiff's constitutional rights;**
> **(2) The violation must be a part of policy or custom and may not be an isolated incident; and**
> **(3) There must be a link between the specific policy or custom to the plaintiff's injury.**

*Id.* at 690-92.   There are a number of ways to prove a policy or custom of a municipality.   A plaintiff may show (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  *Id.*

   A municipality may still be liable under *Monell* for a single incident where: (1) the person causing the violation has "final policymaking authority;" (2) the "final policymaker" "ratified" a subordinate's actions; or (3) the "final policymaker" acted with deliberate indifference to a subordinate's constitutional violations.  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999).  It is well established in the Ninth Circuit that an

**14**

allegation based on nothing more than a bare averment that the official's conduct conformed to official policy, custom or practice suffices to state a *Monell* claim under Section 1983. *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy. *Id.* at 390.

Plaintiff's second and third claims assert a failure to train claim against the County and a failure to supervise claim against individual Defendants Sheriffs Kleier and B. Darling, in the second count. Under certain circumstances, a municipality can be liable for failure to properly train its employees. *City of Canton, Ohio*, 489 U.S. at 388. To prevail on a failure to train theory, a plaintiff must allege that the inadequacy of training amounted to "deliberate indifference to the rights of persons with whom the police come into contact." *Id.; see also Tanner v. Heise*, 879 F.2d 572, 582-83 (9th Cir. 1989). Only where plaintiff can allege that a failure to train reflects a "deliberate" or "conscious" choice by a municipality can a claim against a city be stated under § 1983.

15

Plaintiff sufficiently states a § 1983 *Monell* failure to train claim in his second cause against the County:

> Defendants KLEIER, B. DARLING, and DOES 1 through 20, and each of them, had responsibility to assign competent detectives to conduct the JED Molest Investigation, had the power and authority to assign and train ERICSSON for such an investigation, and had responsibility to supervise ERICSSON's conduct of the JED Molest Investigation. KLEIER, B. DARLING, and DOES 1 through 20, and each of them, knew or with reasonable diligence should have known of ERICSSON's lack of adequate training and experience to undertake the JED Molest Investigation. The conduct and inaction of each of these policymakers or supervisors relating to such training, assignment and supervision showed a grossly negligent, reckless, callous or deliberate indifference, or willful blindness, to violation of STOLL's constitutional rights. (FAC ¶ 63)
>
> KLEIER, B. DARLING, and DOES 1 through 20, and each of them, through action and inaction, directly and proximately set in motion a series of acts by ERICSSON and others, including but not limited to MURILLO, which these defendants knew or should have known would cause constitutional injuries to STOLL. (FAC ¶ 64)

Plaintiff also sufficiently states a § 1983 *Monell* failure to train claim in his third cause against the County:

> Defendants knew or should have known that these departures, promoted and implemented by C. DARLING, from POST Guidelines would likely lead to false molest accusations and ultimately to false child testimony at criminal trials of wrongly charged and actually innocent criminal defendants, such as STOLL. (FAC ¶ 73)
>
> KCWD, KCSO, C. DARLING, JAGELS, B. DARLING, and DOES 1 though 20, and each of them, thus created a common, persistent and widespread custom, pattern, practice and course of conduct for MURILLO and for certain other KCWD social workers during at least 1982 through 1985. (FAC ¶ 79)
>
> COUNTY knew or should have known that its training and supervision were grossly deficient; it was deliberately indifferent, or acted with gross or reckless disregard, to the likelihood that the constitutional rights of individuals would be violated. (FAC ¶ 80)
>
> The COUNTY policy, custom, pattern, practice or persistent course of conduct during 1982-1985 of using KCWD social workers to dominate the course and handling

16

of KCSO criminal investigations of possible child sex crimes was a direct and proximate cause of the fabrication of false child abuse allegations against STOLL and many others, and was a direct and proximate cause of the violation of STOLL's constitutional rights and the rights of others unjustly accused and convicted of child molest crimes not committed.   (FAC ¶ 81)

Plaintiff need not satisfy all of the requirements set forth above at the motion to dismiss stage.  Rather, a claim against a local government is sufficiently pled so long as it states a "short and plain" statement of an unconstitutional act or decision for which the local government is responsible. *See* Fed.R.Civ.P. 8(a)(2).  Notice pleading is defined by Federal Rule of Civil Procedure 8(a)(2) which states "a pleading which sets forth a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relied." *See also Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1127 (9th Cir. 2008).  Plaintiff claims that the County failed to train, staff, supervise, control, monitoring and discipline Defendants Ericsson, KSCO Juvenile Unit Detectives investigating suspected child sex crimes, Murillo, other KCWD social workers-all of which was a direct and proximate cause of Plaintiff Stoll's constitutional rights.  This is sufficient to satisfy the requirements of Fed.R.Civ.P. 8(a)(2) and *Monell* at the pleading stage.

The motion to dismiss the second and third § 1983 *Monell* failure to train claims is DENIED.

B.   Failure to Supervise

Plaintiff also sufficiently alleges a failure to supervise claim against Defendants Sheriffs Kleier and B. Darling, sued in their individual capacities, in the second cause of action:

17

Defendants KLEIER, B. DARLING, and DOES 1 through 20, and each of them, had responsibility to assign competent detectives to conduct the JED Molest Investigation, had the power and authority to assign and train ERICSSON for such an investigation, and had responsibility to supervise ERICSSON's conduct of the JED Molest Investigation.  KLEIER, B. DARLING, and DOES 1 through 20, and each of them, knew or with reasonable diligence should have known of ERICSSON's lack of adequate training and experience to undertake the JED Molest Investigation.  The conduct and inaction of each of these policymakers or supervisors relating to such training, assignment and supervision showed a grossly negligent, reckless, callous or deliberate indifference, or willful blindness, to violation of STOLL's constitutional rights.  (FAC ¶ 63)

...KLEIER, B. DARLING, and DOES 1 through 20, and each of them, purposefully, or with reckless or deliberate indifference, or with willful blindness, failed to give or provide such guidance, supervision, monitoring, oversight and control of ERICSSON's conduct of that investigation, resulting in violation of STOLL's constitutional rights.  KLEIER, B. DARLING, and DOES 1 through 20, and each of them, through action and inaction, directly and proximately set in motion a series of acts by ERICSSON and others, including but not limited to MURILLO, which these defendants knew or should have known would cause constitutional injuries to STOLL.  (FAC ¶ 64)

KLEIER, B. DARLING, and DOES 1-20, and each of them, made a deliberate and conscious choice among various alternatives when assigning ERICSSON to the JED Molest Investigation, or when ratifying this assignment, or when failing to ... supervise ERICSSON adequately therefor, resulting in STOLL's unconstitutional warrantless arrest, in unconstitutional delay in providing prompt probable cause judicial review and arraignment, and in STOLL's unconstitutional conviction directly caused by the crime investigators' creation of minors' false reports and false testimony of child sex abuse.  (FAC ¶ 65)

As stated in *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991):

Supervisory liability is imposed against a supervisory official in his individual capacity for his "own culpable action or inaction in the training, supervision, or control of his subordinates," *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir.1987); for his "'acquiesce [nce] in the constitutional deprivations of which [the] complaint is made,'" *Meade v. Grubbs*, 841

18

F.2d 1512, 1528 (10th Cir.1988) (citation omitted); or
for conduct that showed a "'reckless or callous
indifference to the rights of others.'" *Bordanaro*, 871
F.2d at 1163.

946 F.2d at 646.

Plaintiff has not named any individual defendants in his
third cause of action for supervisory liability, which is a claim
imposed against individual supervisory defendants. *Id.* The
motion to dismiss the second claim, as to the Defendants Kleier
and B. Darling's supervisory liability, is DENIED, the motion to
dismiss the third claim for supervisory liability is GRANTED.

III. Fourth Cause of Action (Failure to Disclose)

Defendants argue once again that the fourth cause of action
is barred by collateral estoppel.  Doc. 42, Mot. to Dismiss, 10-
11.  Defendants claim that the issue of whether Ericsson,
Murillo, or other investigators secretly tape-recorded interviews
with suspected child victims of sexual abuse was litigated during
the habeas corpus proceedings in Kern County Superior Court in
2004, with the Superior Court ruling against Plaintiff on the
issue. Id., 11.

A federal court must give a state court judgment the same
preclusive effect as would be given that judgment under the law
of the state in which the judgment was rendered. *Migra v. Warren
City School Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984); *In re
Mantz*, 343 F.3d 1207, 1214 (9th Cir. 2003); *see also* Romualdo P.
Eclavea, Annotation, *State or Federal Law as Governing
Applicability of Doctrine of Res Judicata or Collateral Estoppel
in Federal Court Action*, 19 A.L.R. Fed. 709, § 4[b].

"Traditionally, collateral estoppel has been found to bar

19

re-litigation of an issue decided at a previous proceeding 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be re-litigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'  It is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. [Citation.]  An issue is actually litigated '[w]hen [it] is *properly raised,* by the pleadings or otherwise, and is submitted for determination, and is *determined* ....'"  *People v. Sims* 32 Cal.3d 468, 484, 651 P.2d 321, fn. omitted (1982); *see also People v. Taylor* 12 Cal.3d 686, 695, 527 P.2d 622 (1974) ([the doctrine's purposes are: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation."].); *People v. Carter*, 36 Cal.4th 1215, 1240, 117 P.3d 544 (2005).

     Defendants argue that all the elements of collateral estoppel are satisfied.  The Superior Court in the habeas corpus proceeding held that Plaintiff "has not met his burden of showing that tapes were made during the interviews of the child witnesses prior to their testimony at trial."  Ruling, at 2.  Defendants argue the issue was thus litigated and decided at the habeas corpus proceeding.  The previous proceeding resulted in a decision on the merits – Plaintiff's petition was granted and is

final.  Finally, the party against whom Defendants seek to assert
collateral estoppel is Plaintiff in the present case.

However, the issue of the existence of the tapes was not
necessary to the Superior Court's decision to grant the writ of
habeas corpus.  Further, the tapes issue in this case from the
Superior Court proceedings, where the judge was focused on the
tapes' role in producing an unreliable conviction.  Here, the
tapes's existence is sought to be used as partial proof of a
broader course of conduct that was allegedly carried out in bad
faith to wrongfully obtain the conviction, and though the
ultimate result was the same, the Superior Court judge was not
focused on the civil arguments.  To that extent, neither the
issue nor the incentive to litigate is identical.  Claim
preclusion does not apply.

The motion to dismiss the fourth claim is DENIED.

IV.  **Fifth Cause of Action (Brady Violation - Failure to Gather, Preserve, Disclose)**

The fifth cause of action names Ericsson, Kleier, Murillo,
and B. Darling as Defendants.  (FAC, ¶ 105.)  All named
Defendants are sued in their individual capacities.  (*Id.*)  B.
Darling and Kleier are also sued in their official capacity.
(*Id.*)  Plaintiff alleges Defendants' reckless or deliberately
indifferent failure to disclose exculpatory evidence violated
Plaintiff's due process rights.  Defendants argue that the claim
should be dismissed based on three "directly analogous and
binding precedent[s]"[6] which hold that the Ninth Circuit has

---

[6] *Devereaux v. Abbey,* 262 F.3d 1070 (9th Cir. 2001);
*Cunningham v. City of Wenatchee,* 345 F.3d 802 (9th Cir. 2003);

1
2
3
4
5

restricted the range of § 1983 claims based on faulty
investigation in child sexual abuse contexts to those involving
deliberate or bad faith <u>falsification</u> of evidence.  All three
cases pled a deliberate-fabrication-of-evidence claim, but none
of the three cases dealt directly with a *Brady* claim.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

    A *Brady* violation occurs where the prosecution suppresses
material exculpatory evidence.  *Maryland v. Brady,* 373 U.S. 83,
87 (1963).[7]  To constitute a *Brady* violation in the criminal
context, three elements must be met.  *Strickler v. Greene,* 527
U.S. 263, 281-82 (1999).  First, the State must have <u>suppressed</u>
some evidence, either purposefully or inadvertently.  *Id.*
Second, the evidence must be <u>favorable to the accused </u>because it
is either exculpatory or impeachment material.  *Id.*  Third, the
evidence must be <u>material to the outcome</u>.  *Id.*  Evidence is
material for *Brady* purposes "if there is a reasonable probability
that, had the evidence been disclosed to the defense, the result
of the proceeding would have been different."  *United States v.
Bagley*, 473 U.S. 667, 681-82 (1985).  The inquiry at hand is "not
whether the defendant would more likely than not have received a
different verdict with the evidence, but whether in its absence
he received a fair trial, understood as a trial resulting in a

22
23

and *Gausvik v. Perez,* 345 F.3d 813(9th Cir. 2003).

24
25
26
27
28

    [7] In *Brady,* the prosecution, upon defense's request to
examine the extra-judicial statements made by the defendant's
confederate, withheld a statement in which the confederate
admitted he had perpetrated the actual killing.  The Court held
that the suppression by prosecution of evidence favorable to an
accused upon request violates due process where evidence is
material either to guilty or to punishment, irrespective of good
faith of prosecution.

verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).

In the criminal context, *Brady* imposes a "no fault" obligation upon prosecutors to turn over exculpatory evidence. *See Brady,* 373 U.S. at 87. A prosecutor's withholding of exculpatory material evidence is grounds for a new trial, whether the withholding was innocent, negligent, or intentional. *Id.* However, circuit courts are divided on the question of whether a similar "no fault" standard applies in civil cases where liability is based upon a *Brady* violation. There is a split in the circuits. *Compare McMillan v. Johnson*, 88 F.3d 1154, 1567 (11th Cir. 1996) (holding that investigators have a duty to disclose under *Brady* in a § 1983 action, irrespective of good or bad faith) with *Villasana v. Wilhoit*, 368 F.3d 979, 980 (8th Cir. 2004)(holding that bad faith is required to state *Brady* claims against law enforcement officials in a § 1983 action). Neither the Supreme Court nor the Ninth Circuit has addressed this issue.

The Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels* does not require bad faith for a due process violation; rather, it requires only a deliberate decision on the part of an officer to deprive a person of life, liberty or property. *Id.* at 331. The Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), provided further guidance for a due process challenge to executive action, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that

it may fairly be said to shock the contemporary conscience." *Id.* at 847, n.8.  What constitutes conscious-shocking action depends on the facts and circumstances of each case. *Id.* at 850. *Lewis* concerned a substantive due process claim in a police high-speed car chase, where the Court required the police officers' conduct to rise above deliberate indifference, reasoning deliberate indifference is more suitable to a situation where "actual deliberation is practical." *Id.* at 851.  While the Supreme Court has not fully explicated standards of culpability for substantive due process claims, the above provides some guidance.

A *Brady* due process claim makes the non-disclosure of exculpatory evidence a violation of the Due Process Clause irrespective of the good or bad faith of the non-disclosing officer in a criminal case; bad faith is not required to establish a civil *Brady* violation.  Under *Daniels,* Plaintiff must establish that Defendants deliberately withheld exculpatory evidence from Plaintiff; not that the withholding was in bad faith; deliberate, purposeful withholding of material evidence by law enforcement officers is sufficiently outrageous to support an inference of bad faith, even if such a state of mind is not specifically required as a separate element of this constitutional tort.

Under the existing case law, Plaintiff has pled sufficient facts to withstand dismissal of his civil *Brady* claims.  First, Plaintiff alleges that two kinds of evidence were intentionally suppressed by one or more of named law enforcement Defendants who were under a constitutional duty to disclose: (1) tape recordings or verbatim transcriptions of the recordings of investigative

1  interviews of some of the child witnesses were withheld, and (2)

2  children's statements made during their interviews that Plaintiff

3  had not sexually molested them were suppressed.  (FAC, ¶¶ 114,

4  115.)  Second, the evidence allegedly withheld could have been

5  both exculpatory and impeachment evidence.  Denials of sexual

6  abuse by the alleged victims were potentially exculpatory

7  evidence.  The evidence against Plaintiff in his child

8  molestation trial consisted solely of the testimony of child

9  witnesses.  The children's prior inconsistent statements could

10 have materially called their reliability and credibility into

11 question.  *See United States v. Williams,* 668 F.2d 1064, 1068

12 (9th Cir. 1981) (holding that prior inconsistent statements may

13 be introduced to impeach a witness).  The described evidence

14 asserted to have been withheld was allegedly favorable to

15 Plaintiff.  Third, because the evidence against Plaintiff in his

16 criminal trial consisted solely of children's testimonies with no

17 corroborating physical evidence, the credibility of the child

18 witnesses could have been dispositive of the trial outcome.  If

19 believed by the jury, there is a reasonable probability that, had

20 the witnesses' prior inconsistent statements been disclosed to

21 the defense and introduced at the trial, the result of the trial

22 would have been different.  The prosecution's failure to disclose

23 such evidence could have prejudiced Plaintiff so as to deny

24 Plaintiff a fair trial.  The evidence allegedly withheld was

25 potentially material to the outcome.[8]  Finally, Plaintiff alleges

---

27     [8] "*Brady* information includes 'material...that bears on the
28 credibility of a significant witness in the case.'"  *United
   States v. Brumel-Alvarez,* 991 F.2d 1452, 1461 (9th Cir. 1993)

sufficient facts to show that Defendants deliberately withheld the exculpatory statements from Plaintiff.

Plaintiff alleges *Brady* claims, not deliberate-fabrication-of-evidence claims, in his fifth cause of action.

The motion to dismiss the fifth claim is DENIED.

<u>CONCLUSION</u>

For the reasons set forth above,

(1) The motion to dismiss Plaintiff's first cause of action for failure to provide a timely probable cause hearing is DENIED, except as to the § 1983 Fourth Amendment false arrest.  The motion to dismiss Plaintiff's first cause of action for the § 1983 Fourth Amendment false arrest is GRANTED WITH PREJUDICE. The motion to dismiss Defendant Jagels on Eleventh Amendment immunity grounds is GRANTED WITH PREJUDICE.

(2) The motion to dismiss Plaintiff's second cause of action is DENIED.  Defendants Kleier and B. Darlings, sued in their official capacities are DISMISSED from the suit WITH PREJUDICE.

(3) The motion to dismiss Plaintiff's third cause of action is DENIED.  The motion to dismiss the third claim for supervisory liability is GRANTED.  Defendants C. Darling and Defendant Jagels, each sued in his official capacity in that capacity are DISMISSED from the suit WITH PREJUDICE.  Municipal department Defendants KCWD and KCSO are DISMISSED from the suit WITH PREJUDICE.

---

(quoting *United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir. 1988)).  Prior inconsistent statements of a pertinent witness may be material to the outcome.  *United States v. Hanna,* 55 F.3d 1456, 1459 (9th Cir. 1995).

**(4) The motion to dismiss Plaintiff's fourth cause of action is DENIED.**

**(5) The motion to dismiss Plaintiff's fifth cause of action is DENIED.**

IT IS SO ORDERED.

**Dated:      September 5, 2008                    /s/ Oliver W. Wanger**
                                               UNITED STATES DISTRICT JUDGE

27